## McClure et al. *v.* Fairfield, Appellant.

[Marked to be reported.]

*Mechanic's lien—Equitable title.*

A mechanic's lien can be filed against an equitable title, and a sale on a judgment thereunder, against the equitable owner, will enable the purchaser to bring ejectment against the legal owner in possession: Eberly v. Lehman, 100 Pa. 542.

*Equity—Laches—Bill to quiet title.*

A bank agreed to sell a lot of land in March, 1886, to Harriet Oates, a married woman. In May, 1886, Mrs. Oates contracted with McClure for the construction of houses on the lot. The houses were built immediately thereafter, and were completed in the following August. After the buildings had been practically completed Mrs. Oates released her title to the lot to the bank, the bank in consideration thereof repaying the money paid by her on account of the purchase. On Aug. 26, 1886, the bank conveyed the lot to defendant. At the time the bank accepted the surrender, it was aware of the improvements made by McClure, and defendant had also full knowledge of them. In September, 1886, McClure filed mechanics' liens against the buildings and lots, recovered judgment on the liens, and subsequently purchased at sheriff's sale the equitable title of Mrs. Oates, and in February, 1887, received a sheriff's deed therefor. He thereupon entered into possession of the lot and buildings, and died in September, 1887. In March, 1888, his widow and heirs filed a bill in equity against the defendant, to quiet the title to the land. *Held*, that there was no unreasonable delay in filing the bill, and that, under the circumstances of the case, plaintiffs were entitled to relief.

*Dower—Payment of one third of purchase money into court.*

In the above case it was not improper to decree that one third of the purchase money, payable by plaintiffs, should be paid into court as defendant's wife did not join with her husband in the deed to quiet the title.

Argued Oct. 26, 1892. Appeal, No. 24, Oct. T., 1892, by defendant, James G. Fairfield, from decree of C. P. No. 2, Allegheny Co., April T., 1888, No. 562, on bill in equity filed by Matthew S. McClure et al. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity to quiet title.

The bill, filed against James G. Fairfield, the Freehold Bank and Charles Oates and Harriet Oates, his wife, in right of said Harriet Oates, averred that plaintiffs were the heirs at law of Abdiel McClure, late of the borough of Homestead, Pa., who died Sept. 23, 1887, intestate. That on or about May 12,

1886, the said Abdiel McClure made a contract with Mrs. Harriet Oates, one of the defendants (a married woman), to furnish the materials for, and construct four frame houses upon lot No. 60, in the plan of Homestead borough, for the consideration of $3,200, and that at the time of making said contract Mrs. Oates represented to Abdiel McClure that she was the owner of said lot, having purchased the same from the Freehold Bank, one of the defendants, and paid cash therefor. That Abdiel McClure fulfilled his part of the contract, and, upon the failure of Mrs. Oates to pay the contract price, entered apportioned mechanics' liens. That proceedings were instituted for the collection of the liens, judgments entered, and writs of execution issued, and the title of Mrs. Oates to said lot No. 60, with the improvements on said lot, was sold to Abdiel McClure, and a sheriff's deed therefor duly acknowledged and delivered to him, and that Abdiel McClure entered into possession of the property and the possession is now held by plaintiffs. That in the latter part of July, 1886, before the entry of the mechanics' liens, but after the houses had been practically completed, Abdiel McClure was informed by Mrs. Oates that she was not the owner in fee simple of said lot No. 60, but held the same under a contract with the Freehold Bank, by virtue of which she was to pay $400 therefor, only fifty dollars of which sum had been paid, and that she was about to abandon her purchase. That afterwards Mrs. Oates released her title to said lot to the Freehold Bank, the bank in consideration thereof repaying the money paid by her on account of the purchase. That upon the release from Mrs. Oates to the Freehold Bank being effected, the said bank conveyed the said lot to James G. Fairfield, one of the defendants, by deed in fee simple, bearing date Aug. 26, 1886, duly recorded. That, at the time the bank accepted the surrender of the title of Mrs. Oates and repaid the money, it was aware of the improvement of the lot and of the fact of Abdiel McClure's liens thereon, and that said James G. Fairfield, at the time of his purchase from the Freehold Bank, had full knowledge of existence of Abdiel McClure's mechanics' liens and of all the circumstances attending the surrender of title by said Harriet Oates; in fact, was instrumental in procuring the surrender of said title and return of the money paid therefor by said Harriet Oates. That the

surrender of title by said Harriet Oates to the Freehold Bank, and the sale by said bank to James G. Fairfield, was in fraud and violation of the rights of the plaintiffs.

The bill prayed that specific performance of said contract of sale between said Freehold Bank and Harriet Oates be decreed in favor of the widow and children of Abdiel McClure, upon payment by them to the person entitled thereto of such sum as may be found to have been due thereon by Harriet Oates at the time of the surrender of her rights thereunder.

James G. Fairfield filed an answer, admitting the main averments of the bill, but denying the fraud.

The case was referred to A. H. Mercer, Esq., who found the facts as stated in the opinion of the Supreme Court, and recommended a decree in favor of plaintiff.

On June 19, 1891, the court entered the following amended decree :

" 1. That plaintiffs are the equitable owners of lot No. 60, in the plan of Homestead borough, and are entitled to a conveyance of the legal title thereto from the defendant, James G. Fairfield, upon the payment to said Fairfield of the sum of $350, balance due on said contract, with interest from April 22, 1886, to March 22, 1888.

" 2. That the said defendant James G. Fairfield, shall, within thirty days from the entry of this amended decree, make, execute and deposit with the prothonotary a deed conveying said lot No. 60, in the plan of Homestead, in fee simple, free and clear of all incumbrances, and that the said plaintiffs shall, within the same period of time, deposit with the prothonotary the said sum of $390.25.

" 3. That upon the deposit of the deed and the said sum of $390.25 with the prothonotary as aforesaid, the prothonotary shall forthwith deliver the said deed to the plaintiffs, and if said deed be made and executed by said James G. Fairfield and his wife, the prothonotary shall appropriate so much of the said sum of $390.25, as may be required for the purpose, to the payment of one half of the costs of this suit, including a master's fee of $200, and shall pay over the remainder of said sum to James G. Fairfield.   But if the deed filed be the deed of James G. Fairfield, alone, without the joinder of his wife, then the prothonotary shall (1) retain in his possession (subject to the order of this court as to the proper investment thereof) the

sum of $130.08, being the one third portion of said $390.25, until the question of dower shall have been determined by the death of said James G. Fairfield or his wife; (2) appropriate so much of the remaining $260.17 as may be required for the payment of one half of the costs, including a master's fee as aforesaid, and (3) pay the remainder of said sum to James G. Fairfield. The remaining one half of the costs to be paid by the plaintiffs."

*Error assigned* was, inter alia, above decree, quoting it.

*N. S. Williams, G. W. Williams* and *W. B. Rodgers* with him, for appellant, cited, on the question of laches, Smith v. Lawrence, 15 Mich. 499; Datz v. Phillips, 137 Pa. 203; Jones v. Jones, 11 Phila. 559; on the question of equity jurisdiction, Eberly v. Lehman, 100 Pa. 542; Barnard v. Hoyt, 63 Ill. 342; Bunce v. Gallagher, 7 Am. Law Reg., N. S. 32; Washburn's Ap., 105 Pa. 483; Smaltz's Ap., 99 Pa. 310; Burk's Ap., 75 Pa. 141.

*Wm. H. McClung,* for appellee, cited, on the question of laches, Dixon v. Oliver, 5 Watts, 512; on the question of dower, Burk's Ap., 75 Pa. 141; Adkins v. Holmes, 2 Carter, 199; and cases cited in opinion of supreme court.

OPINION BY MR. JUSTICE GREEN, January 3, 1893:

The learned counsel for the appellant, with entire frankness, concede that upon the facts found by the master the plaintiffs are entitled to a remedy, and they admit further that equity has jurisdiction in a case of this kind if the facts warrant relief. They also agree that the case of Eberly v. Lehman, 100 Pa. 542, expressly rules that a mechanic's lien can be filed against an equitable title, and that a sale on a judgment thereunder, against the equitable owner, will enable the purchaser to bring ejectment against the legal owner in possession. They contend that there can be no recovery in this proceeding because of the equitable rules that he who seeks equity must do equity, and that equity will not aid one who is guilty of laches. As to the latter of these objections, when the character and order of the facts are considered, it does not seem to us that the charge of laches can be sustained. The agreement of sale by the Freehold Bank to Mrs. Oates, of the lot in question, was made in March, 1886, the contract of Mrs. Oates with Abdiel McClure for the construction of the houses was made

May 12, 1886, the houses were built immediately thereafter and were completed in August following. No money having been paid by Mrs. Oates on the building contract, McClure filed his liens in September, 1886, and proceeded thereon by action in the courts to the recovery of judgment, issuing of execution and sheriff's sale, at which he purchased the equitable title of Mrs. Oates and received a sheriff's deed therefor in February, 1887. He thereupon entered into possession of the lot and buildings and died in September, 1887. The present bill was filed by his widow and heirs in March, 1888. Only seven months elapsed between the acquisition by McClure of his title, and his death, and during that time he was in the actual possession of the property. We cannot consider a delay during this short interval, in such circumstances, as laches in any sense. After his death, in not exceeding six months, the bill was filed by the plaintiffs, his widow and heirs. There is no unreasonable delay in this. As one whole year is allowed for the settlement of the estates of deceased persons, and this proceeding was commenced in half that time, there is no room for an accusation of laches.

The other objection to a recovery, that he who seeks equity must do equity, is disposed of by the findings of the master. He found upon competent testimony, and the admissions of the appellant in his answer, that Mrs. Oates acquired an equitable title in fee simple to the lot, under her agreement with the bank, and that any objection to her coverture and consequent want of mutuality was removed by the improvements made by her on the lot; that the bank had waived strict performance of the contract, and never attempted to work a forfeiture; that neither the cancellation executed by Mrs. Oates across the face of the contract nor the return of the money paid by her from the Freehold Bank operated to divest the equitable estate held by her under the contract of sale; that the defendant took title from the bank with notice of the rights of Mrs. Oates and therefore only took the legal title which remained in the bank; that McClure by his proceedings on his mechanic's lien took the equitable title of Mrs. Oates which descended upon his death to his heirs at law; that as owner of the equitable title and rights of Mrs. Oates, Abdiel McClure and thereafter his heirs, became entitled to a deed for the said lot upon payment or tender of the purchase money remaining due on the said lot;

that a tender was made to Fairfield by intendment of law; that the rights of Mr. Fairfield were the same as the rights of the bank; that the rights of Abdiel McClure, and thereafter of his heirs, were the equitable contract rights of Mrs. Oates, and that Mr. Fairfield did not tender performance of the mutual and dependent contract which by devolution subsisted between the McClures and him, and worked no forfeiture of the same, and that the said contract still subsisted at the time of the filing of the bill in this case, and that the payment of the sum of fifty dollars to Mrs. Oates by the bank was a donation which cannot be charged to the account of Mrs. Oates.

An examination of the testimony shows that all of these findings, which were findings of fact, were fully warranted by the testimony. On the subject of Fairfield's knowledge of Mrs. Oates' title, of the work being done on the lot by McClure for her, and of a claim by him for his work prior to the time of his purchase from the bank, the evidence is full and entirely satisfactory. The legal conclusions expressed in the findings are scarcely impugned and cannot be resisted. That McCure took the equitable title of Mrs. Oates as against the bank and that Fairfield took the legal title of the bank only, subject to the equitable title of Mrs. Oates and after her of McClure, are propositions which cannot be, and really are not, seriously disputed. In this situation it is clear that the equitable title could have been enforced against the bank, and we can see no good reason why it cannot be enforced against Fairfield, their successor to the legal title. Ejectment could not be brought because the heirs of McClure were in possession, and the only remaining remedy available to them was the present bill.

As to the decree regarding the interest of the wife, it perhaps could not be sustained, if it were not that the original contract was made, not with Fairfield, but with the bank, and that he came to their title by succession. It was therefore not a contract made by a married man, but like a contract made by a man when single, who afterwards marries before deed made. The one third of the purchase money has been set aside by the decree to await the determination of the dower question, depending upon the survival of the husband or wife, and the reasons which control the courts in their ordinary holding that the whole of the money must be paid and the pur-

chaser take the risk of the dower do not seem applicable. The wife was not dowable out of this land when the contract was made, because it was made with the bank, and her husband had no interest in it at that time. When his interest did accrue, it was only in the legal estate held by the bank, and not in the equitable estate held by Mrs. Oates. The title at the time of its acquisition by Fairfield was already incumbered by the agreement made by the bank, and against that agreement no claim of dower could be interposed, as the bank was only an artificial person. In the case of Kintner v. McRae, 2 Carter, 453, it was said: "It will scarcely be contended that the vendor of land who agrees to give a credit for part of the purchase money and to make title when the whole shall be paid, can by a marriage before the whole purchase money becomes due impair or alter his contract with the vendee by incumbering the land with the right of dower." The same doctrine is held in Oldham v. Sale, 1 B. Mon. 76; Gully v. Ray, 18 B. Mon. 107, and Gaines v. Gaines, 9 B. Mon. 298. Chancellor KENT, in vol. 4 of his Commentaries, p. 50 (sixth edition), says: "As a general principle, it may be observed that the wife's dower is liable to be defeated by every subsisting claim or encumbrance in law or equity, existing before the inception of the title, and which would have defeated the husband's seizin. An agreement by the husband to convey before dower attaches, will, if enforced in equity, extinguish the claim to dower. In equity, lands agreed to be turned into money, or money into lands are considered as that species of property into which they were agreed to be converted; and the right of dower is regulated in equity by the nature of the property in the equity view of it." This doctrine of conversion we have followed, and illustrations are found in the cases of Rangler's Appeal, 3 Pa. 377, and Leiper's Appeal, 35 Pa. 422.

The decree of the court below is affirmed, the appellant to pay the costs of the appeal.