Importers' and Traders' National Bank of New York, Appellant, v. Lyons.

*Res judicata—Attachment execution—Partnership.*

Where an attachment execution is issued against an alleged interest in a partnership, and an issue is framed and tried, and judgment entered against the attaching creditor, and an appeal from the judgment is non prossed, such judgment is res judicata as to an issue raised on a subsequent attachment execution in which the same parties are involved, and the same alleged partnership interest is sought to be taken.

Argued March 31, 1904. Appeal, No. 92, Jan. T., 1904, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1899, No. 760, on verdict for garnishee in case of Importers' and Traders' National Bank of New York v. J. Harry Lyons, Defendant, and Samuel Simpson and Samuel Simpson trading as Samuel Simpson & Company, Garnishee. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Attachment execution against an alleged interest in a partnership.

At the trial the court directed a verdict in favor of the garnishee.

The court refused a new trial, BEITLER, J., filing the following opinion :

On June 19, 1899, the bank obtained judgment against J. Harry Lyons, for $57,375.77, and issued an attachment sur judgment against Samuel Simpson and Samuel Simpson trading as Samuel Simpson & Company and others, which attachment was regularly served.

On June 21, interrogatories to Samuel Simpson & Company, six in number, were filed. To these, answers were filed on July 8. On July 15, additional interrogatories, 29 in number, were filed, and on July 27, answers to these were filed. On August 25, the third series of interrogatories were filed numbered from 36 to 51, and answers thereto were filed September 13. On September 8, the plaintiff took a rule on the garnishee for judgment, and on September 19, the court entered judgment against the garnishee for $5,441.52. The next day the garnishee appealed to the Supreme Court (January term, 1899, No. 351).

On September 22, Samuel Simpson, individually, and trading as Samuel Simpson & Company, filed his plea with notice of special notice.

The Supreme Court decided the case, in an opinion by Mr. Justice BROWN, April 23, 1900 (195 Pa. 479).

Simpson in his answers set out that he had been notified that Elizabeth J. Lyons (mother of J. Harry Lyons) claimed to be the party interested as partner with him, but that he disputed her claim, and that his contention was that whatever he owed was due to J. Harry Lyons, but that if compelled to pay the bank the amount of the judgment against him he would be "exposed to the danger of being compelled to meet her claim and of being compelled, if the same shall be decided in her favor, to pay her what I shall have been compelled to pay under such judgment to the plaintiff in the present attachment execution." The Supreme Court decided that he was a mere stakeholder, and entitled to the protection of the court,

" and a judgment should not have been rendered against him when there was a doubt as to the defendant's title to the fund attached."

The Supreme Court further said: "If we were to sustain the contention of the appellee that, at the time the attachment was issued, Lyons was a partner, we would be compelled to summarily dispose of this appeal by reversing the judgment against the garnishee : for, if the defendant was a partner, and there was no settled account between him and the garnishee, which is not pretended, no attachment could lie : Knerr v. Hoffman, 65 Pa. 126. The remedy would be under the Act of April 8, 1873, P. L. 65. But we will not summarily so dispose of it."

Judgment was reversed, and the record remitted " that the cause may proceed to issue and trial in due course of law, to determine what the real relations between the defendant and the garnishee were and to ascertain the rightful claimant of the funds attached."

Pending the appeal in the Supreme Court Elizabeth J. Lyons on October 26, 1899, filed a bill in equity (in C. P. No. 1 of September term, 1899, No. 498) against J. Harry Lyons and Samuel Simpson, wherein she alleged that she formed a partnership with Samuel Simpson, which continued until March 18, 1899, at which time there had accumulated a large amount of undivided profits.

To the bill Simpson answered that he had never entered into any partnership with either Elizabeth J. Lyons or J. Harry Lyons ; that he had, in February, 1896, begun the business of importing and selling goat skins " of which business the said J. Harry Lyons was to be and was, until he left my employment on March 18, 1899, the general manager, his compensation being one half the net profits of the business."

The answer denied that the plaintiff was entitled to any account from Simpson.

J. Harry Lyons filed answer admitting that Elizabeth J. Lyons, his mother, was Samuel Simpson's partner.

On these pleadings it appeared that Simpson admitted that one half of the profits did not belong to him. He asserted that they belonged to J. Harry Lyons as compensation as manager. J. Harry Lyons and his mother, Elizabeth J. Lyons, as-

serted that they belonged to the latter as a partner with Simpson. The issue thus made up came on for trial before Judge BRÉGY, and on May 22, 1900, he filed his adjudication finding that Mrs. Lyons was Simpson's partner and entered a decree that the matter be referred to Benjamin Daniels, Esq., to state an account. From this decree Samuel Simpson appealed (S. C. January term 1900, No. 293). In an opinion by Mr. Justice MITCHELL, May 6, 1901, the decree was affirmed, but modified, the court saying : " The learned judge below found the fact of a partnership between plaintiff and the defendant Simpson under the name of Samuel Simpson & Company. There was testimony on which such finding was based, and we have not been convinced that we should reverse it. But it was a finding of a partnership as between the parties, and it by no means follows that a partnership was established as against creditors. The complainant's son, J. Harry Lyons, was burdened with debts from previous business operations which prevented his engaging in business in his own name. The arrangement with defendant, whatever it was, was intended to secure to J. Harry Lyons all the benefits of a partnership without its liabilities to his creditors. Whether it was legally valid for that purpose as against such creditors, could only be determined by proceedings to which the creditors were parties. The decree therefore in the suit between plaintiff and defendant that the arrangement was valid and that appellant was answerable as a partner to complainant, was not an adjudication as against the attaching creditor, and if the latter should be successful in his suit appellant would be compelled to pay twice. From this risk he has a right to be protected, and the fact that the attachment was based on information given by him did not take away that right."

The modification of the decree was thus stated : " The decree for an account is affirmed, but is modified so that there shall be no final decree for payment of any balance found due by appellant until the attachments now pending against him as garnishee shall have been finally determined, and in case the plaintiff, after due notice shall neglect or refuse to appear in such attachment proceedings and defend her title, and there shall be a recovery against the appellant, then with leave to the appellant to apply to the court to open the decree and re-

lieve him against any double liability in such manner as equity may require."

In the presentation of the evidence before Judge BRÉGY this appears:

February 27, 1900.

Mr. Crawford files of record the following agreement:

And now, February 9, 1900, it is agreed by and between the parties to the above suit, that the testimony taken on the motion for special injunction and receiver shall be read in evidence upon the trial of the above cause on the equity trial list, with like effect as if then duly taken, and with a right to either party to recall for further cross-examination any of the witnesses to the said testimony and to offer any additional testimony which they may desire and which may be competent.

And it is further agreed by and between the said parties that there are certain undisputed facts in the case, as follows:

1. That the amount of cash in the hands of Samuel Simpson, trading as Samuel Simpson & Company, and accounts which he takes as cash on his own account, with interest to December 1, 1899, is $23,344.69, of which he is entitled to one half absolutely.

2. There are also the following amounts due Samuel Simpson and Company, to wit: Eberhardt & Company, $8.30; Buchanan's American Tea Company, $98.31; Charles Landell, $300; Steamship "Knight Bachelor," $806, of which Samuel Simpson is entitled to one half absolutely.

3. That the remaining asset of Samuel Simpson & Company is the indebtedness of A. L. P. Duncan & Company, March 18, 1899, which the plaintiff claims to be $21,844.79, with interest from March 18, 1899, and the defendant claims that the said amount is only $15,992.57, with interest from March 18, 1899.

4. That the annexed is a copy of the ledger account in the books of Samuel Simpson of his dealings with A. L. P. Duncan & Company, since March 18, 1899, showing the dates and amounts of goods sold by Samuel Simpson to A. L. P. Duncan & Company and the dates and the amounts of the receipts by Samuel Simpson from A. L. P. Duncan & Company.

5. That the defendant claims to deduct from that half of the cash in his hands belonging to some one other than himself, that is, to the plaintiff, her son of his attaching creditors.

(1) The amount of a promissory note now in the defendant's possession, made by Warren M. Orr to the order of John Harry Lyons and not indorsed, for $150, dated November 9, 1898, at six months.

(2) One half of the sum of $12,309.94, being the aggregate amount of the additional two and one half per cent paid by Samuel Simpson & Company to J. B. Moors & Company, of Boston, as shown in the said testimony, to which two claims of deduction the plaintiff denies that the defendant is entitled, and it is distinctly understood and agreed that this agreement shall in no wise prejudice, impair or in any wise affect the said claims of the said Samuel Simpson and of the plaintiff respectively.

EMIL ROSENBERGER,

Attorney for Samuel Simpson.

CRAWFORD, LOUGHLIN & DALLAS,

For Elizabeth J. Lyons and J.

Harry Lyons.

On December 6, 1899, the bank issued a second attachment against Simpson, and on June 13, 1900, a third attachment. On July 11, 1900, Simpson pleaded to these two attachments.

On November 7, 1900, the issue framed between the bank and Simpson, garnishee on the third attachment, came on for trial before Judge BRÉGY. He excluded the paper just referred to, and upon the conclusion of the plaintiff's evidence directed a verdict for the garnishee saying that if J. Harry Lyons was Simpson's partner "then the testimony shows, I think, that there was no settled account between them of all their affairs," and the account between them, he held, could not be settled in the trial on the attachment.

A motion for a new trial having been refused, the plaintiff on May 7, 1901, took an appeal (S. C. January term, 1901, No. 185), which on January 6, 1902, was non prossed.

On March 13, 1902, the bank issued a fourth attachment against Simpson, and on March 15, 1903, a fifth.

The matter of the equity suit, Elizabeth J. Lyons v. J. Harry Lyons and Simpson, being before the master, he took testimony and reported that Elizabeth J. Lyons was entitled to a decree against the defendant, Samuel Simpson, for $35,024.69.

From this decree both Mrs. Lyons and Simpson appealed (S. C., January term, 1903, No. 69 and No. 73).

In Simpson's Appeal the Supreme Court modified the decree reducing the amount due by Simpson to Mrs. Lyons to $28,486.63, and saying, in an opinion by Mr. Justice POTTER : " When the case was here before, upon an appeal from the interlocutory decree, it was ordered that there should be no final decree for the payment of the balance found due by Simpson until the attachment then pending against him as garnishee of J. Harry Lyons had been finally determined. We understand those proceedings have now been disposed of, but that during the accounting before the master, another attachment was served upon the defendant Simpson as garnishee of J. Harry Lyons. This attachment is still undetermined. Payment under the decree of the court below should, therefore, not be required until the attachment now pending is determined or until the defendant Simpson is properly protected against any liability thereunder by a satisfactory bond of indemnity."

In Mrs. Lyons's Appeal, the assignments of error were overruled, and the appeal dismissed. The two opinions were filed July 9, 1903 (207 Pa. 7).

Subsequently the Supreme Court modified the decree in the Simpson Appeal, 207 Pa. 13 ; and on December 14, 1903, this court entered a final decree in favor of Mrs. Lyons fixing the amount to be paid to her by Simpson, as directed by the Supreme Court, at $30,998.67.

The litigation at this date had resulted in a decree in Mrs. Lyons's favor in equity proceedings wherein she was plaintiff and her son, J. Harry Lyons, and Simpson were defendants. The third attachment against Simpson on the judgment by the bank against J. Harry Lyons had been tried and had resulted in a judgment for the garnishee.

Acting on the opinion in 195 Pa. 479, the bank, on January 10, 1901, issued a writ of fieri facias and took in execution and sold the interest of J. Harry Lyons in the partnership of Samuel Simpson & Company and purchased the same. The Act of April 8, 1873, P. L. 65, provides that " the purchaser at such sale shall thereupon have a right to compel a settlement of the partnership accounts of such partnership by a proceed-

ing in equity and to determine and receive the interest of said judgment debtor or debtors in the partnership."

Thereupon on February 16, 1901, the bank as the purchaser of the interest of J. Harry Lyons in the partnership of Simpson & Company filed a bill in equity against J. Harry Lyons, Elizabeth J. Lyons, the Real Estate Title Insurance and Trust Company, and Samuel Simpson and Samuel Simpson trading as Samuel Simpson & Company, and Samuel Simpson lately trading with J. Harry Lyons under the firm name of Samuel Simpson & Company.

The bill prayed, inter alia, that an issue be raised, to be tried by a jury to determine whether J. Harry Lyons was a partner of Samuel Simpson in the business of Samuel Simpson & Company, and to ascertain what moneys are in the hands of Samuel Simpson belonging to J. Harry Lyons and that the same be paid to the bank.

To the bill the Title Company demurred; the other defendants answered. On December 10, 1901, the case being on the equity trial list, the bill was dismissed for want of prosecution, the entry made by the trial judge (Judge BRÉGY), being: "This being the day fixed for the trial of the case, the plaintiff not appearing or showing any reason for a continuance, the bill is dismissed for want of prosecution."

The bank took a rule to strike off this order which on December 23, 1901, this court discharged. Then the bank filed exceptions, and on January 22, 1902, these were dismissed, the order being: "This cause coming on to be heard upon exception by the plaintiff to the order made by the Honorable F. Amedee BRÉGY, December 10, 1901, entering a decree that the bill be dismissed for want of prosecution, and the plaintiff not appearing the exception is dismissed and the plaintiff's bill of complaint is also dismissed."

At this time there were still two attachments undisposed of, those issued on June 19, 1899, and December 6, 1899. On March 17, 1902, the bank suffered voluntary nonsuits as to these.

*Error assigned* was in entering judgment for garnishee.

*James W. M. Newlin,* for appellant.

*John G. Johnson*, with him *Emil Rosenberger*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 9, 1904:

In an elaborate opinion refusing a new trial the learned judge of the court below has clearly and fully stated all the facts of this litigation from its inception in June, 1899, when the plaintiff obtained a judgment against J. Harry Lyons, until the entry of the order discharging the rules for a new trial in this case on the issues framed on the fourth and fifth attachment executions issued on the judgment. Five attachment executions were issued on this judgment against the same garnishees, who were Samuel Simpson individually and trading as Samuel Simpson & Company. The first attachment was issued on the date the judgment was obtained in June, 1899, and the last, on March 13, 1903. The money or effects sought to be reached in the several attachments were the same, viz: the interest of J. Harry Lyons, the defendant, in the firm of Samuel Simpson & Company. The issue framed on the third attachment, issued June 13, 1900, was tried in November, 1900, before Judge BREGY. In that case it appeared that there had been no settlement of the partnership accounts of the firm of Samuel Simpson & Company, and the trial judge directed a verdict for the garnishee. From the judgment entered on that verdict, the plaintiff took an appeal which was non prossed in this court on January 6, 1902.

On the trial of the present issues, framed on the fourth and fifth attachments, the plaintiff attempted to retry the question raised and adjudicated against it in the action tried before Judge BREGY in November, 1900. In that case the plaintiff bank alleged that the defendant was a partner in the firm of Samuel Simpson & Company, and that an account had been stated showing an indebtedness to J. Harry Lyons by the firm. In the present case the plaintiff attempted to show the same facts by the same evidence, and further that the judgment in the third attachment case had been obtained by collusion and fraud. The court below excluded such evidence as was offered to sustain the issue disposed of on the trial of the third attachment, and there was no sufficient evidence produced at the trial of any collusion or fraud in obtaining the former judgment. It was, therefore, clearly the duty of the trial judge to

direct a verdict for the garnishees. There was no offer by the plaintiff to show that any money or effects of the defendant had come into the hands of the garnishees since the entry of the judgment in the third attachment case. The plaintiff offered to show by Samuel Simpson when on the witness stand that, prior to the trial on the third attachment, the witness had prepared a statement of the partnership affairs which was made the basis of the agreement of February 9, 1900, between Mrs. Lyons, J. Harry Lyons and Samuel Simpson. This was objected to and properly excluded. In commenting upon this offer in his opinion refusing a new trial, the learned judge says: " This was for the purpose of showing that in fact there had been a settlement of the partnership accounts between J. Harry Lyons and Samuel Simpson, the witness. . . . The agreement made was in the equity suit wherein Mrs. Lyons was plaintiff. It was not an agreement that Simpson owed J. Harry Lyons, as his partner, any stated and agreed amount. It was an admission that there were certain undisputed facts, among them, that Simpson had in his hands certain sums of money, one half of which he admitted did not belong to him. The admission was made in a suit wherein Mrs. Lyons was asserting that the one half that Simpson did not claim belonged to her. The result of that suit was a decree in her favor, an account stated by the master, revised and reduced by the Supreme Court and then the amount further modified. In no sense can the agreement be taken to be a settlement of a partnership between J. Harry Lyons and Samuel Simpson." We are of opinion that the trial judge was right in holding that the agreement of February 9, 1900, was not a settlement of the partnership accounts and hence if J. Harry Lyons had an interest in the partnership of Samuel Simpson & Company, the agreement did not make it subject to attachment execution.

The judgment in the third attachment case determined that there were no money or effects, subject to the attachment, in the hands of the garnishees on June 13, 1900, the date of the service of the writ, and that none had come into their hands subsequent to that date and prior to November 7, 1900, the date of the trial. This was the matter in controversy between the parties, and hence the judgment determined the cause on its merits. This judgment became absolute and final when the

appellant bank, the attaching creditor, failed to prosecute the appeal subsequently taken by it to this court. If the trial court erred in any of its rulings or in directing a verdict for the garnishees, the plaintiff, who was the appellant there and is the appellant here, had the opportunity to have the error corrected by having the judgment reversed in this court. The judgment in that case, therefore, must be regarded as conclusive between the parties as to the merits of the cause of action involved in the case. Here, as we have observed, we have the same cause of action and the same parties, the only additional averment by the appellant being the allegation of collusion and fraud in procuring the former judgment, but which had no evidence on the trial to support it. We are of opinion that the question involved in this issue is the same as that determined by the judgment on the third attachment and is therefore res judicata.

The judgment is affirmed.