# Lyons *v.* Importers' and Traders' National Bank, Appellant.

# Importers' and Traders' National Bank, Appellant, *v.* Lyons.

*Equity—Bill of peace—Vexatious litigation—Attachment execution—Injunction—Restraining litigation in Federal court.*

A, a bank, obtained judgment against B and issued an attachment in execution on it against C, as garnishee. C answered, admitting moneys in his hands, but alleging that they were claimed by D. D subsequently filed a bill in equity against C to compel an accounting to her, and a decree was made awarding her the money in C's hands, which A had tried to reach by its attachment, for the reason that C was not indebted to B. During the pendency of the proceedings in equity between D and C, A issued a second attachment against C, as garnishee, to reach the same fund that it had attempted to reach by the first. Subsequently A issued a third attach-

ment for the same purpose, naming C again as garnishee. A also filed a bill in equity against B, C and D, for the purpose of trying to get from C the money which it had attempted to reach by its attachments. It allowed its bill to be dismissed for want of prosecution. On an issue framed in the third attachment there was a verdict for the garnishee. Later on, A issued a fourth and a fifth attachment for the same purpose, again naming C as garnishee. It suffered voluntary nonsuits on its first two attachments, and a verdict was rendered in favor of the garnishee in the fourth and fifth. After this, A issued a sixth attachment for the same purpose, again naming C as garnishee, and brought suit in the United States courts against C and D to recover the moneys that had been judicially determined to be due from C to D. *Held,* that the litigation of A was vexatious, that the process of the court had been abused by it, and that D might maintain a bill of peace to restrain it from proceeding on its sixth attachment, and from issuing any other. writ to interfere with her collection of the money admitted by C to be due to her; but that she was not entitled to an injunction to restrain the bank from proceeding in the federal court, as she could safely rely upon that court for protection against the abuse of its process.

Argued Jan. 12, 1906. Appeals, Nos. 196 and 197, Jan. T., 1905, by Importers' and Traders' National Bank from decree of C. P. No. 1, Phila. Co., March T., 1899, No. 760, on bill in equity in cases of Elizabeth J. Lyons v. Samuel Simpson and the Importers' and Traders' National Bank of New York and the Importers' and Traders' National Bank of New York v. Elizabeth J. Lyons. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Decree modified.

Bill of peace.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*James W. M. Newlin,* for appellant.—The court below had no jurisdiction of the bill. The decree made by the injunction of December 19, 1904, is void and, in so far as it attempts to enjoin proceedings in the circuit court of the United States, involves a question that can only be determined in that court.

*George L. Crawford,* of *Crawford & Loughlin,* for appellee. —A bill of peace is the proper remedy: Adams Equity, 199; Story's Equity Jurisprudence, sec. 853; Conover v. Mayor,

etc., of N. Y., 25 Barbour, 513; Mead v. Merritt, 2 Paige Ch. 402; Lord Tredegar v. Windus, L. R. 19 Eq. 607 ; French, Trustee, v. Hay, 89 U. S. 250 ; Dietzsch v. Huidekoper, 103 U. S. 494 ; Texas, etc., Ry. Co. v. Kuteman, 13 U. S. App. 99 ; Rodgers v. Pitt, 96 Fed. Repr. 668–70 ; Fallon v. Remington, 10 W. N. C. 119 ; Thompson's App., 107 Pa. 559 ; Kreamer v. Fleming, 200 Pa. 414.

OPINION BY MR. JUSTICE BROWN, March 19, 1906 :

The litigation to which the appellee has been subjected by this appellant has been most vexatious, and she ought no longer to be harrassed by it.  If it is not stopped in the court below, justice will be denied her, and wrong and injustice will be her lot where her rights have been judicially determined and where they ought to be protected.  No other conclusion is possible from an inspection of the records brought up by these appeals.

On June 19, 1899, The Importers' and Traders' National Bank of New York obtained judgment in the court below against J. Harry Lyons, a son of the appellee, for $57,375.77, and on the same day issued upon it an attachment ad lev. deb., in which Samuel Simpson, individually and trading as Samuel Simpson and Company, was named as garnishee.  In his answers Simpson admitted that he had moneys in his hands which he believed belonged to the defendant, but further answered, as a reason why judgment should not be entered against him, that Elizabeth J. Lyons had formally notified him that the moneys and property attached in his hands as belonging to J. Harry Lyons were hers.  We reversed the judgment entered against him on his answers, for the reason that, in view of what they contained, he might have been exposed to the danger of being compelled to pay Mrs. Lyons after having paid the attaching creditor : Importers' and Traders' National Bank v. Lyons, 195 Pa. 479.

While the appeal in the foregoing case was pending, Elizabeth J. Lyons, on October 26, 1899, filed a bill in equity in the court below against J. Harry Lyons and Samuel Simpson, in which she alleged that she had formed a partnership with Simpson, of which the said J. Harry Lyons had been employed as agent and manager.  In that proceeding there was a decree

for an accounting to the complainant, which we affirmed with the following modification: "The decree for an account is affirmed, but is modified so that there shall be no final decree for payment of any balance found due by appellant until the attachments now pending against him as garnishee shall have been finally determined, and in case the plaintiff, after due notice, shall neglect or refuse to appear in such attachment proceedings and defend her title, and there shall be a recovery against the appellant, then with leave to the appellant to apply to the court to open the decree and relieve him against any double liability in such manner as equity may require:" Lyons v. Lyons, 199 Pa. 302. The master appointed reported that Elizabeth J. Lyons was entitled to a decree against Samuel Simpson for $35,024.69, and such a decree was subsequently made. On appeal from this we reduced the amount due by Simpson to $28,486.63, and, to protect him as garnishee, said: "When the case was here before, upon an appeal from the interlocutory decree, it was ordered that there should be no final decree for the payment of the balance found due by Simpson until the attachment then pending against him as garnishee of J. Harry Lyons had been finally determined. We understand those proceedings have now been disposed of, but that during the accounting before the master, another attachment was served upon the defendant Simpson as garnishee of J. Harry Lyons. This attachment is still undetermined. Payment under the decree of the court below should, therefore, not be required until the attachment now pending is determined or until the defendant Simpson is properly protected against any liability thereunder by a satisfactory bond of indemnity:" Lyons v. Lyons, 207 Pa. 7.

On December 6, 1899, during the pendency of the first appeal, the bank, the present appellant, issued a second attachment against Simpson as garnishee, on its judgment against Lyons, and a third on June 13, 1900, after our opinion had been filed in 195 Pa. These two attachments were issued to reach the same fund that the bank had attempted to attach by the first attachment against the same garnishee, and the vexation by the appellant began when the second was issued. An issue was framed in the third attachment, and on November 7, 1900, it was tried, resulting in a verdict in favor of the gar-

nishee. A motion for a new trial having been refused and judgment entered on the verdict, the bank appealed to this court on May 7, 1901, but on January 6, 1902, the appeal was non prossed. On March 13, 1902, the bank issued a fourth attachment against Simpson, and, on the same day of the same month in the following year, a fifth. These were for the same purpose as the other three. On March 17, 1902, it suffered voluntary nonsuits in the first two attachments, issued respectively on June 19 and December 6, 1899.

In the opinion on the first appeal—195 Pa. 479—we held that if Lyons was a partner of Simpson, his interest could not be reached by the bank by an attachment before there was an account settled between him and the garnishee. The remedy of the bank was under the Act of April 8, 1873, P. L. 65, by selling out on a special fi. fa. the interest of Lyons in the partnership, if he had any, and the purchaser at such a sale would acquire a right to compel a settlement of the partnership accounts by a proceeding in equity. Acting upon this, the bank, on January 10, 1901, issued a writ of fi. fa., and the interest of J. Harry Lyons in the partnership of Simpson and Company was sold to it. On February 16, 1901, as the purchaser of this interest, it filed a bill in equity against J. Harry Lyons, Elizabeth J. Lyons, the present appellee, The Real Estate, Title Insurance and Trust Company, and Samuel Simpson, trading as Samuel Simpson and Company, claiming what it alleged was a partnership share of J. Harry Lyons in the said partnership of Samuel Simpson and Company. This is what it had attempted to reach by its attachments. To this proceeding the appellant made the present appellee a party, in which every question it now raises could have been raised. It allowed its bill to be dismissed for want of prosecution.

Issues were framed on the fourth and fifth attachments, which had been issued in March, 1902, and March, 1903, and on January 14, 1904, they were called for trial, when a verdict was directed for the garnishee on each of them. Upon a discharge of the rule for a new trial an appeal was taken to this court, and the judgment below was affirmed. In an opinion written by our Brother MESTREZAT he said: " The judgment in the third attachment case determined that there were no money or effects, subject to the attachment, in the hands

of the garnishees on June 13, 1900, the date of the service of the writ, and that none had come into their hands subsequent to that date and prior to November 7, 1900, the date of the trial. This was the matter in controversy between the parties, and hence the judgment determined the cause on its merits. This judgment became absolute and final when the appellant bank, the attaching creditor, failed to prosecute the appeal subsequently taken by it to this court. If the trial court erred in any of its rulings or in directing a verdict for the garnishees, the plaintiff, who was the appellant there and is the appellant here, had the opportunity to have the error corrected by having the judgment reversed in this court. The judgment in that case, therefore, must be regarded as conclusive between the parties as to the merits of the cause of action involved in the case. Here, as we have observed, we have the same cause of action and the same parties, the only additional averment by the appellant being the allegation of collusion and fraud in procuring the former judgment, but which had no evidence on the trial to support it. We are of opinion that the question involved in this issue is the same as that determined by the judgment on the third attachment and is therefore res judicata:" Importers' and Traders' National Bank v. Lyons, 209 Pa. 136.

But the appellee was to have no peace. On April 4, 1904, before the last appeal before us was disposed of, the bank issued a sixth attachment on its judgment against Samuel Simpson, trading as Samuel Simpson and Company, for the same purpose as the other five. From the time the first attachment was issued it is not pretended that anything subsequently came into the hands of the garnishee, and the second, third, fourth, fifth and sixth attachments stand on the records of the court below as its abused process. In addition to the last attachment, on April 25, 1904, the bank brought an action in the circuit court of the United States for the eastern district of Pennsylvania against Samuel Simpson and Elizabeth J. Lyons to recover the moneys which it had been judicially determined belonged to her. This is an undenied allegation in the amended bill, and is practically admitted by counsel for appellant in his history of the case, where it is stated that after its bill to establish a partnership between Lyons and Simpson had been dismissed it instituted the suit in the United States court.

For relief from the intolerable situation disclosed by the records in this case, and for protection from continued vexation by the appellant, the appellee filed her bill of peace and the amendment to it. " The obvious design of such a bill is to procure repose from perpetual litigation, and, therefore, it is justly called a bill of peace. The general doctrine of public policy which in some form or other may be found in the jurisprudence of every civilized country, is, that an end ought to be put to litigation, and above all to further litigation; 'interest reipublicæ ut sit finis litium.' If suits may be perpetually brought to litigate the same questions between the same parties or their privies as often as either should choose, it is obvious that remedial justice would become a mockery; for the termination of one suit would only become the signal for the institution of a new one, and the expense might be ruinous to all the parties. The obvious ground of the jurisdiction of courts of equity in cases of this sort is to suppress useless litigation and to prevent a multiplicity of suits:" Story's Equity, section 853.

Money judicially awarded to the appellee in 1903 is still tied up in the hands of .Simpson by the action of the appellant. In his answer to the original bill he says: "I am prevented from the payment of the fund to the complainant, and am thus subjected unnecessarily and vexatiously to the payment of interest and to unnecessary expense and trouble." The relief asked for in the amended bill is: 1. "That the defendant, The Importers and Traders' National Bank of New York, be restrained and enjoined preliminarily until final decree and perpetually thereafter, from further proceeding upon its said sixth attachment execution of April 4, 1904, and from issuing any further attachment executions upon its said judgment against J. Harry Lyons against any of the funds in Samuel Simpson's hands as garnishee, arising from the said partnership carried on in the name of Samuel Simpson & Co., either against Samuel Simpson or Elizabeth J. Lyons as garnishee, or otherwise." 2. "That the defendant, The Importers' and Traders' National Bank of New York, be restrained and enjoined, preliminarily until final decree and perpetually thereafter, from further proceeding in said suit in the Circuit Court of the United States for the Eastern District of Pennsylvania, to

April Sessions, 1904, No. 15, against Samuel Simpson and Elizabeth J. Lyons, or either of them, and from any proceeding against either of them for recovery of any of the said funds of Samuel Simpson & Co., in his hands." In his answer to the amended bill Simpson asks that the relief prayed for be granted.

The specific relief asked for in the amended bill was granted. The order granting the appellee the relief asked for in the first prayer was so manifestly proper that we affirm it without comment. The records are its vindication. If we felt that we could with propriety affirm that portion of the decree restraining proceedings in the federal court, we would unhesitatingly do so, but, the action having been commenced in that court at the time the amended bill was filed, comity and public policy forbid that our injunction should extend to it: Mead v. Merritt, 2 Paige Ch. 402. By the appropriate plea in the United States court the appellee can safely rely for protection by it from the abuse of its process directed against her or the man having her money in his hands, ready and willing to pay her.

We need not discuss the assignments of error in detail. There is no merit in any of them, except in those relating to the injunction as directed against the proceedings in the United States court. They are sustained and all the others overruled. One of those overruled complains that the demurrer filed has not been disposed of by the court below. This assignment is in the face of the record, which shows that the demurrer was not filed until October 24, 1904, six days after an order had been made for a decree pro confesso against the appellant. The decree of the court below is modified by reversing so much of it as restrains and enjoins the appellant from further proceeding in its suit in the circuit court of the United States for the eastern district of Pennsylvania, to April sessions, 1904, No. 15, and, as so modified, it is affirmed, the costs below and on both appeals, which are dismissed, to be paid by the appellant.