# Pittsburg & Lake Erie Railroad Company *v.* Peterson, Appellant.

*Equity—Restraining proceedings at law—Past judgments—Future suits—Free pass—Railroads.*

1. On a bill in equity by a railroad company for a decree declaring invalid an agreement in the nature of a free pass for life and to enjoin future suits on the same, and to restrain the collection of judgments previously obtained for violation of the agreement, the court may declare the agreement invalid and enjoin future suits, but it cannot enjoin the collection of prior judgments, where the railroad company does not show that it did not have a day in court, or that its defense could not have been set up in the actions at law, or that it was prevented from setting it up by fraud or accident.

*Railroads—Free pass—Invalid·agreement.*

2. An agreement in the nature of a free pass for life between a railroad company and a prospective shipper, is invalid where the consideration mentioned is $1.00, and the proof is to the effect that the pass was merely a gratuity in recognition of past kindnesses.

Argued April 23, 1914.    Appeal, No. 62, April T., 1914, by defendant, from decree of C. P. Allegheny Co., Jan. T., 1911, No. 760, on bill in equity in case of Pittsburg & Lake Erie Railroad Company v. George W. Peterson.    Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Decree modified.

Bill in equity to declare an agreement invalid and for an injunction.

MACFARLANE, J., found the facts to be as follows:

1. The McKeesport & Belle Vernon Railroad Company on or about April 10, 1889, gave to defendant an agreement dated April 10, 1889, stipulating in consideration of $1.00 "that it will continuously hereafter transport over the line of the first party's railroad the party of the second part." The date originally written was March 00, 1889, and was altered to April 10, 1889, which was even date with defendant's deed for right of way.

2. On January 1, 1884, the Pittsburg, McKeesport & Youghiogheny Railroad leased to the plaintiff its line and all rights, privileges and property thereafter acquired, the plaintiff to maintain, work and operate the said railroad (the P., McK. & Y.) in all respects as it would be bound to do and would do if it were the owner thereof, "with like franchises, powers, right and privileges, charter, statutory or other which the said Youghiogheny Company possesses, and subject to the like duties and obligations as now rest or may be hereafter imposed upon it, the said Youghiogheny Company, in the premises, and will observe and perform such duties and obligations in the same manner as the said Youghiogheny Company would be bound to do if this indenture were not made." October 7, 1890, the McKeesport and Belle Vernon Railroad was consolidated with and merged into the Pittsburg, McKeesport & Youghiogheny, all liabilities being assumed by the latter company.

3. The plaintiff permitted the defendant to ride free of charge upon its trains while passing over the line of the Belle Vernon road until March, 1910, when he was notified that the agreement would not be recognized and thereafter he was required to and did pay his fare, in each instance taking a receipt from the conductor.

4. Defendant brought seven suits before a justice of the peace, each to recover a number of fares paid by him as follows: May 6, 1910, for $2.44; May 13, 1910, for $1.16; June 28, 1910, $2.98; July 28, 1910, $4.66; September 26, 1910, $3.95; October 18, 1910, $1.16; November 19, 1910, $2.40. Judgments were recovered in which the costs were respectively $16.15; $9.21; $10.03; $10.27; $9.65; $10.55; $11.71. In each suit defendant subpœnaed several of plaintiff's conductors to whom he had paid fare and they attended the first two hearings.

5. These actions were brought and the conductors were subpœnaed for the purpose of harassing the plaintiff.

6. Defendant threatened to bring further actions and this bill was filed December 23, 1910.

7. There was no evidence as to the value of the agreement nor that it was not at a discount.

8. There was no valuable consideration for the agreement.

### CONCLUSIONS OF LAW.

1. The agreement of merger and the lease bind the plaintiff to perform the agreement, if it be valid, otherwise not.

2. The agreement is severable.

3. An injunction should be granted on the ground of vexatious litigation.

4. The defendant's agreement is a free pass or pass at a discount in violation of art. 17, sec. 8, of the constitution and is invalid.

5. It is invalid under the Act of 1874, P. L. 289, Purdon, 3905.

6. The Act of May 31, 1907, P. L. 352, 5 Purdon, 5987, forbids the honoring of the pass.

7. Plaintiff is entitled to a decree restraining further suits upon the agreement and from proceeding to collect judgments already recovered, and declaring the agreement to be invalid, at the costs of the defendants.

### OPINION.

While the agreement is severable (McLaughlin v. Hess, 164 Pa. 570; Allen v. Colliery Co., 196 Pa. 512; s. c. 201 Pa. 579; Page on Contracts, sec. 1486), the numerous actions with their disproportionately large costs were unnecessary and the subpœnaing of the conductors was vexatious, and a court of equity has jurisdiction to suppress useless litigation and to prevent a multiplicity of suits: Lyons v. Importers, etc., Bank, 214 Pa. 428.

The defendant was a prospective shipper, the pass bore the date of his deed, and at that time it was the habit of officials of railroads to distribute passes as

gratuities, and there is no presumption or even an inference that there was a valuable consideration. It is not the case of Watterson v. Allegheny Val. R. R. Co., 74 Pa. 208, where there was a recital of the consideration of $1.00 for a release of right of way over a mile through a farm and there was a natural inference that there was some other consideration. Whether the rule be as contended by plaintiff's counsel, that the defendant must overcome the recital by clear, precise and indubitable testimony with corroboration, or by the preponderance of the evidence as was held in the Watterson case, the evidence ought to be convincing, and it is not. Defendant testified that at the instance of the president of the company he secured a reduction in a claim for damages for right of way from $1,200 to $600, and that the president asked him to continue to assist in getting rights of way, saying, "We will reimburse you for it." That he agreed to this and secured or assisted in securing another right of way, the details of which he did not remember, and a few months after, the president asked him what his bill was and suggested that he would give him free transportation, which offer was accepted. The only other witness had been the right of way agent for the company, and his testimony was that the defendant was not employed and was helping him through friendship, and that the president said that the defendant "had been very good and rendered a great deal of service to the company and had never been paid for anything and he thought he was entitled to it," i. e., to the pass. That "He was going to give Mr. Peterson an agreement for transportation or going to give him transportation." This testimony is to the effect that the pass was a gratuity in recognition of past kindnesses. I am unable to conclude that there was a valuable consideration.

A pass in consideration of $1.00 is at a discount, and it is for the defendant to show that it was not so. He gave no evidence as to the value of the pass. The constitution forbade "free passes or passes at a dis-

count," and I am unable to see how the act of 1874 can validate "passes granted for a valuable consideration under contracts made between corporations and individuals" if such passes are at a discount. The suggestion made by Mr. Backalew that the statute was in contempt of the constitution is apt. Although Mr. White in his "Constitution of Pennsylvania," p. 501, thinks that there is a remedy for violation of the constitution, it is not necessary to so hold, for the Belle Vernon road was limited in its powers by the constitution. The plaintiff assumed only the legal obligations of its lessor.

The plaintiff's bill does not invoke art. 17, sec. 3, of the constitution, but if it invalidates the agreement it is our duty to consider it. It forbids undue or unreasonable discrimination in charges for transportation of passengers, and persons transported shall be delivered at any station at charges not exceeding charges for transportation of persons in the same direction. The Act of May 31, 1907, P. L. 352, 5 Purdon, 5897, forbids any discrimination. It is in part, "No discrimination in charges or facilities for transportation shall be made between transportation companies and individuals or in favor of either by abatement, drawback or otherwise." "Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government and no obligation of a contract can extend to the defeat of legitimate governmental authority:" L. & N. R. R. v. Mottley, 219 U. S. 467. In that case an agreement made in 1871 to issue free passes and to renew them, it being part consideration for settlement of a claim for personal injuries, was held to be forbidden by the Commerce Act of 1906. That act is more explicit than the provision of our constitution and the act of 1907, yet the principle applies here. Justice HARLAN said, "But the purpose of Congress was to cut up by the roots every form of discrimination, favoritism and inequality." And it was held that the contract cannot be made the basis of actions at law, and this

whether it was illegal in its inception or the illegality has been created by a subsequent statute.

To now transport Peterson without charge would be discrimination and the company is bound to collect his fare or be subject to the penalty of the act.

The line of the Pittsburg & Belle Vernon is short and entirely within this state, but although it is a part of a system of roads operated by the plaintiff company in interstate commerce, we cannot agree that the Interstate Commerce Act applies. The contention is that because the pass might be used on the Belle Vernon line as a part of a continuous interstate journey and the company be thus caused to violate the Interstate Commerce Act, the agreement is in violation of that act. That he might attempt to do so would not warrant the issuing of an injunction, nor does it invalidate his agreement.

*Error assigned* was the decree of the court.

*Earl A. Morton*, with him *T. C. Jones*, for appellant.— The agreement is not in violation of the Acts of June 15, 1874, P. L. 280, and May 31, 1907, P. L. 352: Jennings v. Morris, 211 Pa. 600; Osborne v. Nicholson, 13 Wall. 654; Railroad Co. v. Richmond, 19 Wall. 584.

An injunction should not have been granted on the ground of vexatious litigation: Curry v. Kansas & Pacific R. R. Co., 58 Kansas, 6; Erie & Pittsburg R. R. Co. v. Douthet, 88 Pa. 243; Allen v. Colliery Engineers Co., 196 Pa. 512; Allen v. International Text Book Co., 201 Pa. 579; Killion v. Wright, 34 Pa. 91; Huntingdon Twp. Poor District v. Poor District, 109 Pa. 579; Clark v. Dill, 8 Pa. Superior Ct. Cases, Sadler, 164.

*John J. Heard*, with him *Reed, Smith, Shaw & Beal*, for appellee.—The agreement is void because it is against the policy of the law and in violation of the constitution of the state, the act of June 15, 1874, the act of assembly

of May 31, 1907, the Public Service Act of July 26, 1913,·
and the acts of congress to regulate commerce: United
States v. Atchison, T. & S. F. R. R. Co., 163 Fed. Repr.
111; United States v. Chicago, I. & L. Ry. Co., 163 Fed.
Repr. 114; State of Nebraska v. Union Pac. R. R. Co.,
87 Nebr. 29; Louisville & N. R. R. Co. v. Mottley, 219
U. S. 467.

OPINION BY RICE, P. J., July 15, 1914:

The decree under review first declares the instru-
ment purporting to be an agreement between the de-
fendant and the McKeesport & Belle Vernon Railroad
Company to be invalid; second, enjoins the defendant
from instituting any further suits against the plaintiff
under and upon the same; third, enjoins the defend-
ant from proceeding to collect the judgments already
obtained upon it before a justice of the peace.    After
due consideration of the evidence and the arguments of
counsel, our conclusion is, that the first six assignments
of error should be overruled, and that the first two
branches of the decree should be affirmed on the find-
ings and opinion of Judge MACFARLANE.    We need not·
add anything thereto, except to say that in our opinion
the findings of the learned judge upon the question of
the consideration for the agreement are supported by
evidence which, if credited, was sufficient for the pur-
pose.    But there is a distinction between an injunction
against the bringing ·of future suits or the further prose-
cution of pending suits and an injunction against the
collection of judgments that have been obtained.    The
former was properly granted in this case, upon the
principles applicable to bills of peace as stated by Judge
STORY and approved in Lyons v. Importers' & Traders'
Nat. Bank, 214 Pa. 428, at p. 434.    But while the juris-
diction of a court of equity may be invoked, in some
cases even after judgment, it is clear that the allegation
and justifiable conclusion that the law tribunal having
jurisdiction of the parties and the subject-matter erred

in giving the judgment, do not alone furnish ground for its exercise: Brown's App., 66 Pa. 155; Rockwell v. Tupper, 7 Pa. Super. Ct. 174. Again, where the contract sued upon was severable, and the party had an election to sue for each breach as it occurred or to sue in one action for the value of the contract as an entirety, a court of equity will not ordinarily restrain the collection of the several successive judgments, merely because the plaintiff might have pursued the latter course. It may be said, on high authority, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he could have availed himself in a court of law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery: Bispham's Principles of Eq., 7th ed., sec. 409. "It would seem to be settled in Pennsylvania that chancery will grant relief by injunction to stay proceedings, where a judgment is procured by fraud or given upon a consideration which is illegal, or upon a transaction contrary to public policy or in violation of the law, provided the defendant has had no day in court, and has been guilty of no laches in failing to set up the defense when he had no opportunity to do so:" CLARK, J., in Given's App., 121 Pa. 260. Stating the rule negatively, "a court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents:" GRAY, J., in Knox County v. Harshman, 133 U. S. 152. Here, it is not alleged that the plaintiff did not have a day in court or that its defense was of such a nature that it could not set it up in the actions at law, or that it was prevented from setting it up by fraud or accident. Granting that

the plaintiff in those actions acted vexatiously in unnecessarily subpœnaing defendant's conductors after the offers of defendant's attorney to admit all that the plaintiff said he could prove by them, thus swelling the costs, this was not a fraud which entered into the judgments for the principal sums. Perhaps, if the precise amount of the costs thus unnecessarily and vexatiously made could be determined from the record before us, the decree could be sustained to that extent. But we are unable to conclude that the collection of the judgments as entireties, including all the costs, should be restrained. Therefore, the decree will be modified by striking out the third branch of it to which we have referred.

The decree is modified by striking out the last clause of it, which reads: "that he be perpetually enjoined and restrained from proceeding to collect judgments already recovered under and upon said agreement." And as thus modified, it is affirmed, the costs of the appeal to be paid by the appellant.