## Lugin *v.* Dobson, Appellant.

Argued November 17, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

reargument refused April 20, 1954.

*John G. Koedel,* with him *William G. Gault, Alice D. Tobias* and *Tobias & Weilersbacher,* for appellants.

*William F. Cercone,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, March 22, 1954:

Defendants appeal from a decree in equity refusing affirmative relief but awarding damages for destruction of the individual plaintiffs' house and lot resulting from subsidence caused by removal of lateral support. A severance as to Stowe Township was granted, and the case proceeded only as to the individual plaintiffs.

Plaintiffs are the owners of a house and lot on the southerly side of Island Avenue in Stowe Township, Allegheny County, Pennsylvania. The defendant, Hachmeister Co., Inc., is the owner of land on the northerly side of Island Avenue across from and to the east and west of plaintiffs' premises. The defendant, Dobson, was a contractor for Hachmeister. Hachmeister Co., Inc., and its contractor, excavated the Hachmeister land, and it is alleged that this excavation was negligently and carelessly done.

To the findings of the chancellor the defendants filed only 527 exceptions, which were overruled. "These cases involving as they do mainly questions of fact and requiring for correct determination a knowledge of locality are peculiarly for the decision of the court of first instance. Unless we were clearly satisfied that an erroneous result has been worked out by the chan-

cellor who heard the witnesses and is familiar with the properties involved, we would not overturn his conclusion": *Gordon v. Pettey,* 291 Pa. 258, 260, 139 A. 914.

The excavation was made from an embankment along one side of the street. The important feature of the embankment is that it sloped away gradually from the street and formed the toe or bench of earth which supported the higher ground above it, including the street and the land under the houses across the street, and the land above and to the rear of the houses. It is alleged that when a portion of this toe or bench of earth was removed by the defendants, the landslide and resulting damage to the home of the plaintiffs occurred. The embankment runs the length of the Hachmeister property, extending 1200 feet on the northerly side of Island Avenue, a public highway running in an east-west direction. At a point midway on said property along said Island Avenue, a footbridge running in a north-south direction crosses over the land, with its Island Avenue approach resting on said embankment. This case is concerned with the excavation that was made east of the bridge across the street from and to the east and west of the plaintiffs' property.

It is admitted that the plaintiffs' property, located on the southern side of Island Avenue, was a three-story, ten-room brick dwelling, 22 feet wide and 40 feet long, erected on a lot 25 feet wide and 100 feet long. The plaintiffs purchased the lot in 1946 and it was in excellent condition up to the time of the slide. There were no cracks or defects in the house. Indeed, this was proved by a multitude of witnesses. It is alleged that as a result of the excavation it eventually became a shambles, condemned by the fire marshall as unsafe for human habitation.

The excavation made by the defendants began November 25, 1949, and proceeded for several weeks when, it is alleged, it became apparent that because of the

removal of earth along the northern side of Island Avenue, a movement of earth was started under the highway on the southern side of Island Avenue, including the home of the plaintiffs. The chancellor found as a fact that the excavation was initiated without benefit of sub-surface soil tests and was left unshored and unsupported from the outset to the time of the hearing, with accompanying rain, frost, snow, freezing and thawing of the past two years.

The fact found by the chancellor that the excavation made by the defendants caused the slide on the land of the plaintiffs and the consequent destruction of their property was amply supported by the evidence. This was shown by expert witnesses, including the evidence of a civil engineer with 54 years of experience as both a practitioner and consultant, and the evidence of a general contractor with wide experience relating to accepted engineering procedure to be followed in making an excavation of this nature, as well as other witnesses. The facts found by the chancellor having evidence to sustain them, and being approved by the court en banc, are binding upon us. Therefore in this appeal it must be taken as a fact that the excavation made by the defendants caused the damages to plaintiffs' house.

The Restatement, Torts, §819, reads: "A person who negligently withdraws lateral support of land, or of artificial additions thereon, in another's possession, is subject to liability for harm which may result therefrom to the other's land and to the artificial additions thereon"; and the comment, §819 (f) reads: "Under particular circumstances and conditions, it may be negligence: (1) to excavate sand, gravel, loam, or other friable soil otherwise than in sections; (2) not to furnish temporary support by shoring; (3) to fail to give timely and sufficient notice of the proposed excavation; (4) to maintain an excavation under such conditions

or for such a length of time as to expose the adjoining lands with artificial additions to unreasonable risk of harm as by exposure to rain, frost or weathering; (5) to make use of improper instrumentalities or improper use of proper instrumentalities; (6) to employ incompetent workmen; (7) to neglect to ascertain in advance whether the excavation as planned is likely to expose adjoining lands with artificial additions to unreasonable risk of harm . . ."[1] The chancellor found that the defendants did excavate sand, gravel, loam and other friable soil otherwise than in sections; that they did not furnish temporary support by shoring; that they failed to give timely and sufficient notice of the proposed excavation; that they maintained the excavation under such conditions or for such length of time as to expose the adjoining lands with artificial additions to unreasonable risk of harm by exposure to rain, frost and weather; and that they neglected to ascertain in advance whether the excavation as planned was likely to expose adjoining lands to unreasonable risk or harm. In regard to the seventh category, both defendants admitted that they knew of the unstable condition of the land for a number of years before the present excavation was attempted. The record shows the defendants admitted their failure to give any notice of the proposed removal of ground.

The fact that the excavation was not made on the lot immediately adjoining the plaintiffs' lot would not relieve the defendants from liability for negligence: *Witherow v. Tannchill*, 194 Pa. 21, 23, 44 A. 1088.

". . . the adjoining owners have not such interrelated rights as would compel an owner to know just what

---

[1] In accord: *Spohn v. Dives*, 174 Pa. 474, 34 A. 192; *Witherow v. Tannchill*, 194 Pa. 21, 44 A. 1088; *Irvine v. Smith*, 204 Pa. 58, 53 A. 510; *Cooper v. Altoona Concrete Construction & Supply Company*, 231 Pa. 557, 80 A. 1047; *Diksajtsz v. Brosz*, 104 Pa. Superior Ct. 246, 158 A. 620.

the adjoiner is going to do or is doing, its effect when completed, and whether, in course of time, it might possibly result to . . . the injury of his property. At the time this excavation was made it was possible for defendant to so construct its work that no damage would result . . .": *Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co.,* 275 Pa. 467, 472, 119 A. 547. "A notice that an excavation is to be made on an adjoining lot, to be sufficient, must inform the person to whom it is given of the nature and extent of the excavation, so that he may, after the excavator has done all that is reasonably prudent for the safety of the building, take the necessary precautions to protect his property absolutely": 1 Am. Jur., Adjoining Landowners, §28. In this case once the slide began it was too late for the plaintiffs to save their home, because the nature of the movement, originating as it did on defendants' land, would cause any shoring on plaintiffs' property to slide just as the house did.

The liquidation of plaintiffs' damages was properly made and there was no objection thereto except a purely formal exception.

Thus it will be seen that the plaintiffs made a complete case under the findings of fact of the chancellor, approved by the court en banc.

The only other question can be dealt with briefly and concerns the contention of the defendants that the complaint is inadequate. But the plaintiffs proceeded to trial on the merits without objection to the pleadings; after which it was too late for the defendants to question them: *McMeekin v. Prudential Insurance Company of America,* 348 Pa. 568, 36 A. 2d 430; *Pennsylvania Railroad Company v. Pittsburgh,* 335 Pa. 449, 458, 6 A. 2d 907; *King v. Brillhart,* 271 Pa. 301, 305, 114 A. 515; *Wallace v. Keystone Automobile Company,* 239 Pa. 110, 115, 86 A. 699. The pleadings definitely raised the issues of negligence and the care used. The

affidavit of defense denied all allegations of negligence in detail. The pleadings and the proof show that the defendants were in no way surprised as to the theory of the case being tried.

The decree is affirmed at the costs of the defendants.