**Simon v. Simon**

634

*Michael Egnal*, for plaintiff.
*Charles V. Stoelker, Jr.* and *Jerome J. Verlin*, for defendants.

TAKIFF, *J.*, April 3, 1980—Plaintiff, Sally Lee Simon, filed a complaint in equity seeking, inter alia, a decree directing that a deed recorded in Philadelphia County Deed Book JRS 565, page 62, be cancelled insofar as it purports to convey her undivided one-half interest in a parcel of real estate, then unimproved, situate in the City and County of Philadelphia. Plaintiff further prays for a declaration of her entitlement to the property in question and an order requiring defendants to account for the "rents, profits and issues" which accrued during their ownership of the premises. Subsequent to the conveyance which is here attacked, the grantee-defendants caused substantial im-

provements to be erected upon the premises. Plaintiff asserts in her complaint that defendant Joseph Simon, conspiring with her then husband, the other owner of the subject real estate, wrongfully deprived her of her interest in the property by forging or causing the forgery of her name to the deed from her husband and (nominally) plaintiff to defendants, Joseph H. and Beverly W. Simon, and fraudulently conveying the property to them. On November 20, 21, 22 and 27, 1978 we held hearings on the merits of plaintiff's claim.

## HISTORY

The instant litigation follows a long series of legal confrontations in the Florida courts between plaintiff and her now ex-husband, Charles F. Simon, concerning the dissolution of their marriage and the settlement of their property disputes. On March 20, 1972 the Florida Circuit Court entered a final judgment dissolving their marriage, providing for custody of their minor children, partitioning their Florida residence, and ordering Charles Simon to make alimony and child support payments. A subsequent Florida appellate court holding that a final judgment dissolving a marriage settles all property rights of the parties formed the foundation of a Florida Circuit Court order permanently enjoining plaintiff herein from prosecuting any marital property actions in Pennsylvania.

Plaintiff has failed in her recent efforts in the District Court for the Eastern District of Pennsylvania and in the Third Circuit Court of Appeals to invalidate this anti-suit injunction. For the reasons more fully set forth below, we conclude that full recognition must be afforded this injunction, and we consequently deny the relief which plaintiff now seeks.

## FINDINGS OF FACT

1. Plaintiff Sally Lee Simon is an individual residing at 5555 Collins Avenue, Miami, Fla.

2. Defendants Joseph H. and Beverly W. Simon, husband and wife, reside at 1001 Academy Road, Philadelphia, Pa.

3. Defendant Sidney D. Simon, trustee, resides at 1001 Academy Road, Philadelphia, Pa.

4. At the times of the transactions which are the subject of the instant complaint, plaintiff was the wife of Charles F. Simon. Defendant Joseph H. Simon is a brother of Charles F. Simon.

5. On December 27, 1968 in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, no. 68-19724, plaintiff filed a complaint against Charles Simon seeking divorce, alimony, custody of the parties' minor children, and the right to exclusive possession of the home of the parties, owned by them as tenants by the entireties. Charles Simon filed his answer to the complaint on January 14, 1969.

6. In or about January of 1969 the parties reconciled and resumed cohabitation until December 5, 1969 when plaintiff reactivated the divorce proceedings.

7. Plaintiff and Charles Simon were, prior to September of 1969, owners as tenants by the entireties of various parcels of real property located in Philadelphia, Pa.

8. By deed dated September 22, 1969, purportedly executed by Charles Simon and plaintiff, tenants by the entireties, they conveyed five parcels of land to Charles Simon individually, said deed being recorded on October 10, 1969 in Deed Book JRS 535, page 44.

9. By deed dated November 10, 1969, purportedly executed by Charles Simon and plaintiff, they conveyed the parcel of real estate which is the subject of the matter sub judice to Joseph H. Simon and Beverly W. Simon, said deed being recorded on November 18, 1969 in Deed Book JRS 565, page 62.

10. The premises conveyed to defendants, Joseph H. Simon and Beverly W. Simon (described in no. 9, above), were, inter alia, included in the deed dated September 22, 1969 (described in no. 8, above).

11. On November 10, 1969 Joseph H. Simon and Beverly W. Simon, in consideration of the conveyance then made to them, as aforesaid, paid to Frankford Trust Company $100,000 which sum was then credited toward the reduction of a $150,000 outstanding mortgage obligation of Charles Simon and plaintiff, secured, inter alia, on the premises then conveyed to Joseph H. and Beverly W. Simon, and thereafter released from the lien of the aforesaid mortgage encumbrance held by the bank.

12. Joseph H. Simon and Beverly W. Simon conveyed the tract in question to Sidney D. Simon, as trustee under an irrevocable deed of trust, by two deeds, each dated June 29, 1970 and each recorded in Deed Book P.L.McS. 44, one beginning at page 537 and the other beginning at page 554.

13. By deed dated July 6, 1971, purportedly executed by plaintiff and Charles Simon, a two foot strip of land omitted in error from the deed of November 10, 1969 was conveyed to defendant Sidney D. Simon, trustee, said corrective deed being recorded in Deed Book P.L.McS. 31, page 485.

14. On April 14, 1970 Charles Simon filed in the then pending Florida action, a counterclaim

against plaintiff seeking divorce, custody of the parties' minor children, and the sale of the home which was owned by the parties as tenants by the entireties. Plaintiff filed her answer to the counterclaim on May 1, 1970.

15. On September 21, 1970 plaintiff's complaint for divorce, alimony and custody of the children was dismissed with prejudice, with leave for plaintiff to file a supplemental complaint alleging facts occurring subsequent to the reconciliation of the parties.

16. On October 12, 1970 plaintiff filed an amended and supplemental complaint seeking divorce, alimony, custody of the parties' minor children and adjudication of her claims to various parcels of real estate located in Philadelphia, Pa. Charles Simon filed an answer to the amended and supplemental complaint in November, 1970.

17. In the latter part of 1971 plaintiff instituted legal proceedings in the Court of Common Pleas of Philadelphia County against Charles Simon and defendants herein seeking to recover her interest in various Pennsylvania properties. In that proceeding, captioned Simon v. Simon, Philadelphia Court of Common Pleas, December Term, 1971, no. 3508, plaintiff asserted, inter alia, the same property claims as in the matter sub judice.

18. In November of 1971 Charles Simon sought to amend his counterclaim in the Florida divorce action in order to have the property rights of the parties to the Pennsylvania properties litigated in that proceeding. Plaintiff objected to such amendment, and the Florida court refused to permit the amendment for not being timely filed.

19. On November 29, 1971 upon plaintiff's own motion, an order was issued dismissing her amended and supplemental complaint, and pre-

serving the issues raised by Charles Simon's counterclaim for adjudication.

20. Plaintiff thereafter filed a second amended complaint for separate maintenance, seeking permanent alimony without divorce, custody of the parties' minor children and allowance for their support. Charles Simon timely filed an answer thereto.

21. The above detailed actions were tried on December 7, 1971 and at continued hearings on February 3 and 4, 1972.

22. On March 20, 1972 the Florida court entered a final judgment on Charles Simon's counterclaim dissolving the marriage between the parties, ordering that the marital residence be sold and the proceeds from the sale be divided equally between the parties, and that Charles Simon pay monthly alimony and child support to plaintiff. No appeal was taken from this judgment.

23. The above mentioned alimony award was predicated upon the court's finding that Charles Simon owned a number of properties in Philadelphia, Pa. from which he derived substantial income, no reference having been made in that litigation to any other source of income for either party.

24. On October 24, 1972 Charles Simon filed a complaint in the Florida Circuit Court seeking to enjoin plaintiff from proceeding with numerous actions brought in the courts of Pennsylvania relative to the rights of the parties to real estate located in or around Philadelphia, including the action pertaining to the premises sub judice referred to in No. 17, supra.

25. Judge Major B. Harding, who had granted the parties a divorce, struck from Charles Simon's complaint all allegations that the final judgment of dissolution constituted a final adjudication of the

property rights of the parties barring any further litigation thereof, while reiterating that for purposes of the marriage dissolution the Pennsylvania properties were conceded to be in Charles Simon's ownership.

26. Charles Simon filed an interlocutory appeal to the District Court of Appeals of Florida seeking review of Judge Harding's order striking portions of his complaint.

27. The appellate court reversed the order striking the aforementioned portions of Charles Simon's complaint and held that the divorce decree, where the court had acquired jurisdiction to adjudicate property rights, settled all disputes concerning property rights of the parties and barred any further action by either party to determine such rights: Simon v. Simon, 293 So. 2d 780 (Fla. App. 1974).

28. On October 24, 1974, after remand to the Florida Circuit Court, Charles Simon's motion for summary judgment was granted, and the court permanently enjoined plaintiff from prosecuting against Charles Simon any actions then pending which attempted to assert an interest in his real property, where such claim was predicated upon facts or circumstances which existed on or before March 20, 1972. The Florida District Court of Appeals affirmed the order, Simon v. Simon, 317 So. 2d 83 (Fla. App. 1975), and both the Supreme Court of Florida and the Supreme Court of the United States denied certiorari.

29. After issuance by the Florida court of the anti-suit injunction, plaintiff discontinued with prejudice her pending Pennsylvania lawsuits in which she asserted her interest in various Pennsylvania properties.

30. Plaintiff filed the instant complaint in equity in the Court of Common Pleas of Philadelphia County, December Term, 1974, no. 3862, seeking, inter alia, a declaration of her interest in the subject parcel of real estate (described in paragraphs 7-13, above) allegedly owned by herself and Charles Simon as tenants by the entireties prior to September of 1969. Defendant timely filed an answer to complaint in equity, new matter, and counterclaim, said new matter raising as a defense the prior adjudication of the instant claim. On November 20, 21, 22 and 27, 1978 hearings were held on the merits of plaintiff's claim.

31. In 1978 plaintiff commenced an action in the United States District Court for the Eastern District of Pennsylvania, no. 78-2100, seeking relief from the Florida injunction in order to pursue her claims to Pennsylvania real estate in the Pennsylvania courts.

32. The District Court, per Judge Ditter, issued an opinion and order dated April 17, 1979 granting defendant's (Charles Simon) Fed.R.C.P. 12(b)(6) motion by dismissing that complaint.

33. The United States Court of Appeals for the Third Circuit, by Judge Hunter, sustained the District Court, without opinion, on January 22, 1980 (no. 79-1663).

34. Plaintiff's petition to the court of appeals for reconsideration was denied in March of 1980. Our adjudication, deferred pending the resolution of the Federal action, is now timely.

## DISCUSSION

Plaintiff presently seeks a judicial declaration of her continuing and viable interest in a parcel of real estate located in Philadelphia, Pa. She does so de-

spite the issuance of an injunction by a Florida court prohibiting her from maintaining a lawsuit to pursue this claim.

In 1971 plaintiff raised the same property claim as in the matter sub judice: Simon v. Simon, Philadelphia Court of Common Pleas, December Term, 1971, no. 3508. In that action plaintiff asserted against her then husband, Charles Simon, the same arguments she raises herein with respect to the subject property. The only distinction between the former and present actions is that plaintiff now seeks recovery from the parties who purchased the property from Charles Simon. The basic premise of her argument, i.e., fraud and forgery in the conveyance, remains the same. There exists no substantive distinction between the two actions.

On October 24, 1974 the Florida Circuit Court enjoined plaintiff from prosecuting several pending property claims, including the then pending suit asserting her interest in the property now under consideration. Plaintiff complied with the Florida court order by discontinuing with prejudice her Pennsylvania actions.

The Florida Circuit Court's anti-suit injunction was premised on a finding by the District Court of Appeals of Florida that *all property rights of Charles Simon and his then spouse, plaintiff herein,* were conclusively determined in the final judgment dissolving marriage entered on March 20, 1972, Simon v. Simon, 293 So. 2d 780, 781 (Fla. App. 1974):

"The rule is firmly established that as in the case sub judice where the court has acquired jurisdiction to adjudicate property rights, a final dissolution of marriage judgment settles all property rights of the parties and bars any action thereafter

by either party to determine property rights. Finston v. Finston, 160 Fla. 935, 37 So. 2d 423 (1948): Smith v. Bollinger, Fla.App. 1962, 137 So. 2d 881: Jones v. Jones, Fla.App. 1962, 140 So. 2d 318: McEachin v. McEachin, Fla.App. 1963, 154 So. 2d 894: Thompson v. Thompson, Fla.App. 1969, 223 So. 2d 95: Henderson v. Henderson, Fla.App. 1969, 226 So. 2d 699: Vandervoort v. Vandervoort, Fla.App. 1973, 277 So. 2d 43. In addition, property claims must be put into issue in the dissolution of marriage action since the doctrine of res judicata is applicable even where property rights are not put into issue, if the issue could have been raised. Finston, supra; Cooper v. Cooper, Fla. 1954, 69 So. 2d 881.

"After a close reading of the final judgment of dissolution, it is clear that the property rights of the parties conclusively were determined and settled therein. It is equally clear that the amount of alimony awarded the defendant-appellee, ex-wife, was predicated upon the court's finding that appellant owned the Philadelphia properties and the annual income he derived therefrom."

It is axiomatic that a court of equity has the power to grant an injunction barring an action or proceeding at law by the parties under its jurisdiction. See, e.g., Bluestone v. DeRoy, 298 Pa. 267, 148 Atl. 110 (1929); Kane & Elk R.R. Co. v. Pittsburgh & Western R.R. Co., 241 Pa. 608, 88 Atl. 893 (1913); Kaufmann v. Liggett, 209 Pa. 87, 58 Atl. 129 (1904); and Appeal of McDowell, 123 Pa. 381, 16 Atl. 753 (1889). This power extends to encompass enjoining a litigant from prosecuting actions in states other than the forum state, 42 Am.Jur. 2d, Injunctions §214:

644

"Although equity courts, like other tribunals, act within the territorial limits of the state which creates them and cannot extend their jurisdiction to other sovereignties, their power to grant relief by restraining the bringing or prosecution of judicial proceedings in other states or countries is unquestioned. It is, in fact, the settled rule that a court of equity in one state may, and in a proper case will, restrain its own citizens, or other persons within the control of its process, from prosecuting actions or proceedings in other states or in foreign countries."

In such instances the equity court does not proceed upon a claim of right to control the proceedings in the courts of the other state, but rather upon the ground that it has personal jurisdiction over the parties involved, thereby enabling it to compel them to do or to refrain from doing whatever the equities of the case may require. The Pennsylvania case law gives full recognition to the right of courts to exercise such equitable powers. See, e.g., Delaware, Lackawanna & Western R.R. v. Ashelman, 300 Pa. 291, 150 Atl. 475 (1930); Wenz v. Wenz, 28 Lehigh 468 (1960); and Baltimore & O. R.R. v. Halchak, 71 F.Supp. 224 (W.D. Pa. 1947).

Although there is little doubt that a court of equity may enjoin a party from prosecuting an action in the court of another state, the question as to when this power should be exercised is sometimes a perplexing one. As a general rule a court of equity may enjoin other pending or threatened litigation to avoid a multiplicity or a circuity of actions, Lyons v. Importers' & Traders' National Bank, 214 Pa. 428, 63 Atl. 827 (1906), to prevent interference with local litigation or evasion of the law of the local state, or otherwise where the interposition of equity

is required to prevent manifest wrong or injustice: Delaware L. & W.R. Co. v. Ashelman, supra; Wenz v. Wenz, supra; Austin v. Westinghouse Electric Corp., 59 D. & C. 2d 178 (1972). In the context of the matter sub judice, it has been held that where a court has undertaken distribution or administration of the property of a litigant over whom it has personal jurisdiction, such a party may be enjoined from maintaining proceedings in another jurisdiction which may conflict with the forum court's complete adjudication of the property or the rights involved: Trees v. Glenn, 319 Pa. 487, 181 Atl. 579 (1935); Kendall v. McClure Coke Co., 182 Pa. 1, 37 Atl. 823 (1897); 42 Am.Jur. 2d, Injunctions §224.

While the power of a court in equity to issue an anti-suit injunction is beyond dispute, we are here confronted with the issue of whether or not we are bound to recognize and enforce such an injunction issued by the Florida Circuit Court, 42 Am.Jur. 2d, Injunctions §227:

"Neither the full faith and credit clause nor rules of comity require compulsory recognition of an injunction issued in another jurisdiction against the prosecution of a local action at law. An injunction against the prosecution of an action in another state acts upon the parties rather than the court, and so the court in which the enjoined action is pending has the power to proceed with the litigation despite the injunction. The fact that the plaintiff might be in contempt of the enjoining court is not a matter the foreign court would be compelled to recognize, and the failure of a party to obey the injunction, or of the court to take cognizance of the order, will not affect the validity of the decree issued in the action. Nevertheless, subject to some dissent, it has been held that the court may take cognizance of

the judicial processes of another state and, as a matter of comity, recognize an injunction issued by the courts of another state, so long, at least, as the recognition of the foreign injunction does not conflict with the rights of citizens of the state in which the action is sought to be maintained."

The issuance of the anti-suit injunction by the Florida Circuit Court was premised on the theory that "a final dissolution of marriage judgment settles all property rights of the parties and bars any action thereafter by either party to determine property rights. [Citations omitted.]" Simon v. Simon, 293 So. 2d 780, 781 (Fla.App. 1974). Our courts, in recognizing foreign divorce decrees pursuant to the full faith and credit clause, U.S. Const., Art. 4, § 1, have given such decrees an equally conclusive effect:

"Our Supreme Court has recently set forth the standards for determining the validity of a sister state's divorce decree: 'It is well established that once [a sister state] has granted a divorce decree that decree is presumptively valid in this jurisdiction. Esenwien v. Commonwealth ex rel. Esenwien, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1945); Williams v. North Carolina (II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Such a decree is "a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded. . .," Commonwealth ex rel. McVay v. McVay, 383 Pa. 70, 73, 118 A. 2d 144, 146 (1955). . . .'" Watson v. Watson, 243 Pa. Superior Ct. 23, 28, 364 A. 2d 431, 433 (1976); see, also, Barnes v. Buck, 464 Pa. 357, 346 A. 2d 778 (1975); Stambaugh v. Stambaugh, 458 Pa. 147, 329 A. 2d 483 (1974); Com. ex rel. Achter v. Achter, 167 Pa. Superior Ct. 603, 76 A. 2d 469 (1950); Sur-

vey of Pennsylvania law with reference to full faith and credit of foreign divorce judgment, 20 U.Pitt.L.Rev. 531, 559 (1958). The issuance of the anti-suit injunction, premised on the finality of the divorce decree, is consistent with our own substantive law.

Remaining for our determination is the issue as to whether the Florida court had proper jurisdiction to grant the divorce, and, consequently, the anti-suit injunction, so as to warrant our recognition and enforcement of that decree. That the Florida court had personal jurisdiction over the parties is unchallenged. Plaintiff voluntarily submitted herself to that court's jurisdiction by initiating the divorce proceeding. Neither party has at any time contested the jurisdiction of the Florida court.

It is equally clear that while the Florida court had jurisdiction in personam, it lacked in rem jurisdiction over Pennsylvania property. However, this does not diminish the full opportunity that plaintiff had to litigate her property claims. A recent attempt by plaintiff to challenge the validity of the anti-suit injunction was rejected.* The Federal court hear-

---

*Plaintiff's position before this court has been that the outcome of the Federal court proceeding should have no bearing on our consideration of the instant property claim. However, on appeal to the Third Circuit Court of Appeals, after the District Court (E.D.Pa.) had rejected her challenge to the injunction, plaintiff argued that ". . . The plaintiff's substantial claim to the Pennsylvania property has never been considered, and unless Federal relief is available, it never will be." Simon v. Simon, no. 79-1663, Brief for Appellant, p. 23. We note both the inconsistency of plaintiff's several postures and, more particularly, plaintiff's admission in her Federal court brief as to the impact of that court's decision on our consideration of her property claims.

ing that claim rejected it, saying, Simon v. Simon, 478 F. Supp. 548, 551 (E.D.Pa. 1979):

"It is clear, therefore, that plaintiff was afforded a full opportunity for a hearing on the merits of her claim. An injunction prohibiting her from litigating now what she could have litigated before does not violate her constitutional right to due process. . . .

"It is true that a Florida court could not enter an order which operates directly on title to real estate located in Pennsylvania. Such an order could only be issued under the in rem jurisdiction of a court in the state which is the situs of the property. See Hanson v. Denkla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1236, 2 L.Ed. 2d 1283 (1958); 27B C.J.S. Divorce § 383 (1959). A court having *personal* jurisdiction of the interested parties, however, would be competent to order a *conveyance* of the land, wherever situated.

"This important distinction was recognized in Whitmer v. Whitmer, 243 Pa. Super. 462, 365 A. 2d 1316 (1976), cert. denied, 434 U.S. 822, 98 S.Ct. 67 (1977). . . .

"In the present case, if Mrs. Simon had litigated her claims in the divorce proceedings and prevailed on the merits, the Florida court could have ordered the husband to make any conveyance of the Pennsylvania real estate that it deemed proper. Under Whitmer, such an order would clearly have been recognized as valid by the Pennsylvania courts, since Mr. Simon was subject to personal jurisdiction in Florida.

"It follows then that the injunction under which Mrs. Simon presently suffers is fully valid and entitled to recognition. The order is not an exercise of in rem jurisdiction and it does not purport to affect the title to property located in Pennsylvania. On the

contrary, like an order to convey, the injunction merely affects the personal actions of a party to the divorce proceedings. Its basis is found in the court's in personam jurisdiction, to which the plaintiff-wife voluntarily submitted when she sued her husband in Florida." (Emphasis in original.)

The alimony award included in the Florida divorce decree was based on a finding that ". . . the Husband is the owner of a number of properties consisting of improved and unimproved real estate in Philadelphia, Pa., . . . which was stipulated to have a net value in excess of $1,000,000.00. The Husband's income tax returns indicate actual income therefrom in excess of $20,000.00 after deducting depreciation. The testimony further showed that the properties are producing a gross 'throw-off' of about $120,000.00 per year. Husband has been using the major portion of this sum to provide for himself and his family for the past 10 years." Simon v. Simon, Fla. Circuit Court Divorce Decree, No. 68-19724 March 20, 1972. While gaining the advantage of having the court grant an award of alimony on the assumption that Charles Simon owned these properties, plaintiff successfully resisted the efforts of Charles Simon to have the Florida court resolve all property claims on the merits. (Finding of Fact #18, above.) Possessing the benefits and security of a final award of alimony, plaintiff now seeks to recover title to the very properties upon which, inter alia, the alimony award was predicated. The anti-suit injunction was issued to prevent precisely what plaintiff now seeks to do.

In view of our determination that plaintiff's action is barred by the Florida court's anti-suit injunction, we need not consider the merits of her fraud and forgery claims.

## CONCLUSIONS OF LAW

1. The marriage of plaintiff Sally Lee Simon and Charles Simon was effectively terminated by a final judgment of divorce entered by the Florida Circuit Court on March 20, 1972.

2. The anti-suit injunction issued by the Florida Circuit Court on October 24, 1974, barring plaintiff from prosecuting against Charles Simon any actions then pending which attempted to assert an interest in his real property, is valid and binding. The final dissolution of marriage, including the award of alimony under Florida law, settled all property rights of the parties.

3. In Simon v. Simon, Philadelphia Court of Common Pleas, December Term, 1971, no. 3508, plaintiff asserted the same property claims as in the matter sub judice (defendants herein being in privity with the defendant in that matter, i.e., Charles Simon), said action being discontinued with prejudice by plaintiff, pursuant to the anti-suit injunction.

4. While our obligation to enforce the Florida Circuit Court's anti-suit injunction is discretionary in nature, the equities require that we give it full recognition.

5. Pursuant to the terms of the anti-suit injunction issued by the Florida Circuit Court on October 24, 1974, plaintiff is barred from obtaining the relief she now seeks.

Accordingly, we enter the following

## DECREE NISI

And now, April 3, 1980, upon consideration of plaintiff's complaint in equity and defendants' answer thereto, and after hearing held, it is hereby

ordered and decreed that plaintiff's complaint is dismissed.

BEFORE CHALFIN, BRAIG AND TAKIFF, *JJ.*, May 1, 1981—

## OPINION SUR EXCEPTIONS TO ADJUDICATION AND DECREE NISI

Before the court en banc are plaintiff's exceptions to the adjudication and decree nisi issued by Judge Takiff on April 3, 1980. In this equity action plaintiff had sought a judicial declaration of her continuing ownership interest in a parcel of real estate located in Philadelphia, Pa., once owned as tenants by the entireties by plaintiff and her former (divorced) husband. This action was instituted in the face of the earlier issuance of an "anti-suit" injunction by a Florida court, ancillary to a divorce and support action in that jurisdiction, prohibiting plaintiff from seeking relief with respect to property owned by her then husband. Judge Takiff concluded that full recognition must be afforded that injunction, and consequently plaintiff's request for relief was denied.

Plaintiff's exceptions and her multiple briefs, arguments and supplemental letters raise the following issues for our consideration: (1) Was the bar of the anti-suit injunction adequately raised by the defendants? (2) If so, is the anti-suit injunction applicable to the matter sub judice?; and (3) Have plaintiff's dower rights been extinguished? Additional issues raised by plaintiff relate solely to the underlying factual contention with respect to the authenticity of execution of certain deeds and are deemed irrelevant in view of the court's construc-

tion of the anti-suit injunction and its binding implications.

The instant litigation follows a protracted series of legal confrontations in the Florida courts between plaintiff and her now ex-husband, Charles F. Simon, concerning the dissolution of their marriage and the settlement of their property disputes. On March 20, 1972 the Florida Circuit Court entered a final judgment dissolving their marriage, providing for custody of their minor children, partitioning their Florida residence, and ordering Charles Simon to make alimony and child support payments. A subsequent Florida Appellate Court, holding that the final judgment dissolving the marriage settled all property rights of the parties, formed the foundation for the Florida Circuit Court order permanently enjoining plaintiff herein from prosecuting any actions involving marital property in Pennsylvania. Plaintiff has failed in her recent efforts in the District Court for the Eastern District of Pennsylvania and in the Third Circuit Court of Appeals to invalidate that anti-suit injunction.

## THE RECORD

Plaintiff contends that the bar of the anti-suit injunction was not appropriately raised by defendants and hence their right to use it as a defense was waived. The record clearly indicates otherwise. Paragraph 15 of defendants' new matter reads: "15. A prior action was started by the plaintiff herein, which action was discharged. The action took place in Florida, copy of said Final Order being attached hereto and made a part hereof as Exhibit I. Therefore, plaintiff is collaterally estopped from pursuing this action."

As a technical matter, defendants are incorrect in labeling the defense of the anti-suit injunction as one of collateral estoppel. Collateral estoppel is a bar only to matters actually litigated: Thompson v. Karastan Rug Mills, 228 Pa. Superior Ct. 260, 323 A. 2d 341 (1974). Here, title was never actually litigated.

However, the purpose of a pleading is to notify the opposing party of the issues to which he must be prepared to respond at trial: 2 Goodrich-Amram 2d §1019:1. The final order to which defendants in paragraph 15 of their new matter (above) refer is the order of the Supreme Court of Florida denying certiorari to review the anti-suit injunction.[1] We conclude that the defense was sufficiently raised by the pleadings.

The issue was raised at the outset of the hearing on the merits of plaintiff's claim[2] when the trial judge and counsel engaged in a colloquy which included counsels' dissertation on the tortured history of the prior litigation and the effect of the Florida decrees on the matter sub judice. Various references were made by both plaintiff's and defendants' counsel with respect to the applicability of the anti-suit injunction:

[1]. Plaintiff's concern with defendant's failure to use the nomenclature or descriptive title "anti-suit injunction" is of no consequence. These are descriptive words used by the litigants to describe the particular Florida proceeding. The Florida courts entered an order barring further litigation; they gave their decree no special title or label.

[2]. In the interest of avoiding a multiplicity of litigation, Judge Takiff took testimony on all issues raised by the pleadings, aware of the fact that the critical issue of the import of the prior Florida adjudication was a viable issue which would have to be considered in an appropriate manner.

654

"MR. VERLIN: In the Florida case. And in that summary judgment, which I'll ask that the court take judicial notice of, as we have the docket entries and in Mr. Egnal's own brief to the Supreme Court of the United States, the court said, Husband's motion for summary final judgment granted. Order issued granting permanent injunction against the wife regarding the commencement or continuation of any Pennsylvania litigation determination of the real property rights of husband or wife.

Additionally, the Court ordered the wife to dismiss all of the Pennsylvania litigation.

THE COURT: What was the date of that order?

MR. VERLIN: 10/24/74.

THE COURT: That was in the Appellate Court?

MR. VERLIN: Correct. . . .

Notes of Testimony, p. 23, November 20, 1978

THE COURT: So, your last position or the one you just articulated, is that this whole matter has been the subject of judicial determination and therefore closed, and this Court has no jurisdiction?

MR. VERLIN: That is correct. Now, obviously, I just point out to you, and I have case law on it, it's a court of competent jurisdiction. It was on the same issue. And, Your Honor, I have a case that applies to the parties or their privies. And if, obviously Dr. and Mrs. Simon are the privies so titled, having derived it from Sally Simon.

THE COURT: Okay, I understand the issues."

Notes of Testimony, p. 25, November 20, 1978.

Plaintiff's counsel even brought to the court's attention his then pending challenge to the anti-suit injunction:[3]

---

3. The District Court subsequently determined that the anti-suit injunction was binding upon plaintiff.

"MR. EGNAL: The other fact, Your Honor, now pending before the District Court—our District Court—I'll give you copies of that in due course. A proceeding which sets forth the grounds upon which it is sought to nullify the injunction granted by the Florida Court prohibiting a proceeding in Pennsylvania. And you'll get law by the reams that a jurisdiction cannot exercise any particular authority over titled real estate in a foreign jurisdiction.

Now, that can be left for subsequent discussion and proceedings. I don't think you're getting the complete picture here, because it is rather—

THE COURT: I'll hear the testimony, Mr. Egnal.

MR. VERLIN: We have to answer that, Your Honor.

MR. EGNAL: Let me finish.

THE COURT: It sounds to me like it's just simply another collateral procedure in a tortured litigation.

MR. VERLIN: We have to tell you what it is. It's a Civil Rights action.

MR. EGNAL: You misread the whole thing. It is not. May I say that this decree in Florida did not dismiss this particular action. It specifically excluded it.

THE COURT: I'll see the decree and I'll see the adjudication in due course. . . ." Notes of Testimony, pp. 28-29, November 20, 1978

It is apparent from the foregoing that the parties had appropriately raised and the court had before it the issue of the applicability of the anti-suit injunction, and that it reserved ruling until the record was complete. During the trial of the case, defendants introduced and offered into evidence, without any objection, numerous documents relating to the Florida proceedings, including the following:

DEFENDANTS' EXHIBITS

"#3—Certified copy of Final Judgment of the Florida Court dissolving the marriage.

#4—Petition for Writ of Certiorari to the Supreme Court of Florida (challenging the validity of the anti-suit injunction).

#8—Order of Florida Circuit Judge Harding Denying Petition for Rehearing on Summary Final Judgment entered October 24, 1974.

#9—Florida Appellate Court decision affirming injunction.

#10—Petition for Rehearing on 74-1692.

#11—Denial of Petition for Writ of Certiorari by the District Court of Appeals for the Third District of Florida.

#18—Notes of Testimony from Florida divorce hearing of December 7, 1971, Case No. 68-19724."

In the course of the trial the court requested a more complete record of the Florida actions. Defendants' counsel responded to this request, and in a letter to the court dated December 19, 1978, stated, inter alia:

". . . The major portion of that record consists of material irrelevant to the issues that we have raised to decide res judicata or criminal [sic] estoppel. I have received and am enclosing herewith an index to the record on appeal, which was sent to the Appellate Court after the summary of final judgment on the injunction was entered. . . .

"These cited decisions established on their face that the judgment of divorce was finally adjudged to be res judicata with respect to all of Sally Simon's cases against Charles Simon with respect to real property in Pennsylvania. I believe I have already offered in evidence the necessary testimony and

decisions which support my contentions. If Mr. Egnal wishes to offer any of the testimony from the Florida decisions to support his contentions, I will be happy to agree to whatever portions of that record he believes pertinent. . . ."

Plaintiff's counsel, Mr. Egnal, responded to Mr. Verlin's letter by writing to the court on December 22, 1978:

"A copy of Mr. Verlin's letter of December 19, 1978, in connection with the designated matter is before me.

"It is obvious that in the second paragraph he used the word 'criminal' when he undoubtedly meant 'equitable.' There may be some significance attached to this Freudian slip, and I can only say that there will be a discussion in my brief that may indicate some affinity. However, I am not prepared to accept Mr. Verlin's suggestion although he cavalierly indicates the final result which should prevail *on his defense of res judicata or equitable estoppel. . . .*" (Emphasis supplied.)

After numerous citations to the cases relevant to the anti-suit injunction issue, Mr. Egnal goes on to discuss the procedure for the submission of briefs:

". . . It is suggested, however, that Mr. Verlin's reply to my brief should also include his brief *in support of his affirmative defense of res judicata or equitable estoppel* to which there would be an opportunity for me to reply thereto. (Emphasis added.)

"This would appear to be an orderly and fair procedure particularly in recognition of his burden of proof. Otherwise, if I go first or res judicata or equitable estoppel, I would be fighting windmills which should not be my task. . . ."

Finally, in their requested conclusions of law defendants cite the Florida adjudication as a bar to the instant action.

The pleadings, the testimony, the exhibits and the record in its entirety demonstrate that defendants properly pleaded and argued the "anti-suit injunction" issue, and that plaintiff was fully apprised that this was at issue and had every opportunity to refute defendant's contentions. Plaintiff's present assertion that the matter was not properly pleaded, after it had been given thorough consideration by the court and the parties, is wholly unwarranted. See, e.g., Lugin v. Dobson, 376 Pa. 620, 104 A. 2d 95 (1954); McMeekin v. Prudential Insurance Company of America, 348 Pa. 568, 36 A. 2d 430 (1944); Pennsylvania Railroad Company v. Pittsburgh, 335 Pa. 449, 6 A. 2d 907 (1939); King v. Brillhart, 271 Pa. 301, 114 Atl. 515 (1921); Wallace v. Keystone Automobile Company, 239 Pa. 110, 86 Atl. 699 (1913).

## THE INJUNCTION

On October 24, 1974 the Florida Circuit Court permanently enjoined plaintiff from prosecuting against Charles Simon any actions then pending which attempted to assert an interest in his real property, where such claim was predicated upon facts or circumstances which existed on or before March 20, 1972. The Florida District Court of Appeals affirmed that order, Simon v. Simon, 317 So. 2d 83 (Fla. App. 1975), and both the Supreme Court of Florida and the Supreme Court of the United States denied certiorari. Plaintiff contends that this anti-suit injunction does not apply to the instant proceeding because of alleged technical deficiencies and the absence of the "equities" neces-

sary to support its application. We find, on the contrary, that the consequences of the Florida injunction are clear, and the equities compel its application to plaintiff's present claim.

In the latter part of 1971, plaintiff instituted legal proceedings in the Court of Common Pleas of Philadelphia County against Charles Simon and defendants herein seeking to recover her claimed interest in various Pennsylvania properties. In that proceeding, captioned Simon v. Simon, Philadelphia Court of Common Pleas, December Term, 1971, no. 3508, plaintiff asserted, inter alia, the same property claims as in the matter sub judice. After issuance by the Florida court of the anti-suit injunction, plaintiff discontinued "with prejudice" her pending Pennsylvania lawsuits.

Plaintiff filed the instant complaint in equity in the Court of Common Pleas of Philadelphia County, December Term, 1974, no. 3862, seeking a declaration of her interest in the subject parcel of real estate allegedly owned by herself and Charles Simon as tenants by the entireties prior to September of 1969. In the previously dismissed action plaintiff asserted against her then husband, Charles Simon, the same claim she raises herein. Plaintiff contends that the injunction applies only to actions "then pending" (at the time of its issuance) against Charles Simon, alone.

It is fundamental that a party cannot indirectly and evasively do that which was prohibited from being done directly by a former decree: Welsh v. Beaver Falls Borough, 186 Pa. 578, 40 Atl. 784 (1898). The only distinction between the earlier and the present actions is that plaintiff now seeks recovery from parties who acquired the property by conveyance from Charles Simon. The basic premise of her claim of a continuing and vested interest

in title to the realty, notwithstanding a claimed fraud and forgery in the conveyance from her former husband, remains the same. There exists no substantive distinction between the two actions. The mere elimination of Charles Simon as a named party defendant does nothing to alter the nature of plaintiff's claim or the relief which she seeks, particularly in view of the fact that the remaining defendants are all third-party purchasers from Charles Simon.

Plaintiff argues strenuously that the court should not recognize the anti-suit decree because that decree seeks to protect an underlying judgment that was rendered without subject matter jurisdiction. It is asserted that the Florida court was without subject matter jurisdiction because it attempted to try title to Pennsylvania realty. It is true that the Florida courts issued the injunction after having determined that all property rights were decided in the Florida divorce action. The Florida courts held that even though title to Pennsylvania realty was not actually litigated, principles of Florida res judicata law mandated that all the property rights as between the parties were conclusively determined in the divorce proceedings, Simon v. Simon, 293 So. 2d 780, 781 (Fla. App. 1974):

"The rule is firmly established that as in the case sub judice where the court has acquired jurisdiction to adjudicate property rights, a final dissolution of marriage judgment settles all property rights of the parties and bars any action thereafter by either party to determine property rights. Finston v. Finston, 160 Fla. 935, 37 So. 2d 423 (1948): Smith v. Bollinger, Fla. App. 1962, 137 So. 2d 881: Jones v. Jones, Fla. App. 1962, 140 So. 2d 318: McEachin v. McEachin, Fla. App. 1963,

154 So. 2d 894: Thompson v. Thompson, Fla. App. 1969, 223 So. 2d 95: Henderson v. Henderson, Fla. App. 1969, 226 So. 2d 699: Vandervoort v. Vandervoort, Fla. App. 1973, 277 So. 2d 43. In addition, property claims must be put into issue in the dissolution of marriage action since the doctrine of res judicata is applicable even where property rights are not put into issue, if the issue could have been raised. Finston, supra; Cooper v. Cooper, Fla. 1954, 69 So. 2d 881.

"After a close reading of the final judgment of dissolution, it is clear that the property rights of the parties conclusively were determined and settled therein. It is equally clear that the amount of alimony awarded the defendant-appellee, ex-wife, was predicated upon the court's finding that appellant owned the Philadelphia properties and the annual income he derived therefrom."

Plaintiff argues, in effect, that the Florida courts decreed title in the Pennsylvania realty to her husband. Under the circumstances of this case, we find no impediment to our recognizing the anti-suit decree.

We do note that resort to the Florida courts for the injunction may have been unnecessary. It was sought to protect the underlying judgment of divorce. Had the divorce judgment been raised in our courts initially, the conclusive effect of that judgment, aside from the constitutional considerations we need to decide, would be governed by Florida law: Restatement, 2d, Conflict of Laws, §95. Accepting Florida res judicata law as stated, we therefore examine the constitutional questions underlying the enforcement of that judgment, although the vehicle through which enforcement of that judgment is sought is the anti-suit decree.

Technically, absent the anti-suit decree, the defense of the divorce judgment could be offered as a bar under the Full Faith and Credit Clause of U.S. Const., Art. IV, § 1. Full faith and credit may be refused where the court acts directly to convey title to realty located without its borders: Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3 (1909). The reason for this rule is that a court of one state traditionally lacks subject matter jurisdiction to convey title to realty located in another state. Such an action, being identified as a local action, is maintainable only in a court of the state where the land is located. However, the rigidity of the Eastin rule was largely obliterated by Whitmer v. Whitmer, 243 Pa. Superior Ct. 462, 365 A. 2d 1316 (1976), cert. denied, 434 U.S. 822, 98 S.Ct. 67 (1977). In Whitmer, enforcement of a Florida divorce decree was denied insofar as the Florida decree purported *to convey* title to a portion of a business located in Pennsylvania. The court indicated that the Florida court, having personal jurisdiction over the parties, could have compelled the same conveyance under threat of contempt: 243 Pa. Superior Ct. at 469, 365 A. 2d at 1319. Or, since the Florida court had personal jurisdiction over the parties, the Florida court could have issued an order commanding conveyance which could be enforced in Pennsylvania. See Whitmer v. Whitmer, supra, 243 Pa. Superior Ct. at 469-470, 471, 365 A. 2d at 1319, 1320 (Spaeth, J., concurring); Restatement, 2d, Conflicts of Law, § 102, Comment d.

The situation at hand is not the same. Plaintiff presently before us was also plaintiff in the Florida divorce action. Plaintiff chose *not* to litigate the title to the Pennsylvania realty in the Florida divorce action. The precise question before us is whether a court with personal jurisdiction over its

domiciliaries in a divorce action may require them to litigate claims to property located outside the state in which it sits or suffer the later bar of res judicata. We conclude that it may.

We realize, without regret, that by countenancing such a rule, there is little left to the Eastin rule. First, where plaintiff chooses to litigate out of state property claims, the jurisdictional basis that permits the court to enter a valid order of conveyance is the personal jurisdiction over the parties. Second, where plaintiff chooses not to litigate out of state property claims, the jurisdictional basis is the same. The court, however, does not issue an order prohibiting the conveyance. Instead, the res judicata effect of failing to litigate the property claims may be raised as a defense to later actions, if any, that are instituted in the state in which the property is located. It is also possible later to seek an anti-suit decree, if the court retains personal jurisdiction. The latter approach is less efficient because the court before which the property suits are instituted must make an examination of the basis for the anti-suit decree. As part of that examination, it may be forced to duplicate much of the work of the court that issued the decree. The court in which the property litigation is instituted conducts the same examination when it undertakes the res judicata inquiry pursuant to the full faith and credit clause under the first alternative. The out of state proceedings should be recognized in the state where the property is located because those proceedings were conducted with personal jurisdiction over the parties. The result is that the Eastin rule is easily obviated whenever the original court has personal jurisdiction. This result substantially eliminates the old concept of local actions.

The only time when a court cannot determine

title to out of state property is when it lacks personal jurisdiction over one of the parties. However, where it lacks personal jurisdiction over one party, since it also lacks any claim to jurisdiction premised on the location of the property, there is little rational basis for the court to assert jurisdiction.

It is argued that the Florida court ran afoul of Fall v. Eastin, supra, because it, in effect, decreed that title to the Pennsylvania realty remains in the defendant through application of its res judicata law. Admittedly, the res judicata law as formulated by the Florida courts does have the effect of causing title so to be vested. Nevertheless, the Florida res judicata law does not operate as a conveyance of title, as is proscribed by Fall v. Eastin, supra. At most, the Florida rule is a salutary principle that promotes judicial efficiency. With the Florida court fully able to decide the ownership of the Pennsylvania realty as an integral part of a divorce proceeding between its domiciliaries, there is little reason for us to refuse to recognize the bar of the divorce decree other than an archaic and provincial notion that the effect of the Florida rule is to "oust the jurisdiction" of our courts to try title to Pennsylvania realty. But the only consequence of our "retaining" jurisdiction under such circumstances would be to decide that two proceedings are required when one will do. We see no reason to adopt such a rule.

The Florida injunction issued from practical as well as equitable considerations, i.e., to avoid a multiplicity of litigation and to prevent plaintiff from "forum shopping" for the best available relief at the expense of the courts and the defendants. The Florida courts' disposition of the parties' marital disputes must be given the full effect of an adjudication on the merits. It is incumbent upon us to construe the injunction in this light.

An injunction such as the one presently under consideration "should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it; and when practicable it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." Collins v. Wayne Iron Works, 227 Pa. 326, 330, 76 Atl. 24, 25 (1910). See, also, Com. v. Boley, 441 Pa. 495, 272 A. 2d 905 (1971), and Apple Storage v. Consumers Education and Protective Association, 441 Pa. 309, 272 A. 2d 496 (1971).

However, "[t]he decree should be interpreted in the light of the purpose intended to be accomplished by it. . . ." Rau v. Wilden Acres, Inc., 33 Northamp. 357, 361 (1955). The injunction of October 24, 1974 was issued for the purpose of putting an end to plaintiff's attempts to litigate her claims to specified parcels of real estate. Her effort to avoid the mandate of the injunction by focusing on the language barring prosecution of "any action then pending," is misplaced. The injunction *"permanently"* enjoins such litigation. Her attempts to discontinue the "then pending" actions and thereafter file identical "new" actions, albeit transferor-grantor against the transferee-grantee rather than her former husband, amount to no more than a mere subterfuge.

Plaintiff contends that while she is barred from pursuing claims against Charles Simon alone, defendants Joseph H. Simon, Beverly W. Simon and Sidney D. Simon, trustee, are not within the ambit of the injunction. This is an unduly restrictive construction which would render the anti-suit injunction virtually ineffectual. In Carborundum Co. v. Combustion Engineering, 263 Pa. Superior Ct. 1, 6,

396 A. 2d 1346, 1348 (1979), the court, confronted with a similar problem of defining the scope of an anti-suit injunction, observed that:

"The court was clearly saying to appellant that it should not bring any action, against the parties in the Pennsylvania action, until the lawsuit in Pennsylvania was finished. Even though C.E. is not mentioned by name in the court order, the language of the order intrinsically included them.

"Appellant argues that such a reading is improper because an injunctive order of this type must be construed strictly. We agree that a strict construction must be placed on this order, however, we must not ignore the 'plain meaning' of the order. Thus we conclude that the order did refer to C.E."

Moreover, as is clear from our discussion of the jurisdictional issue, our examination begins with the anti-suit decree and ineluctably journeys to the underlying judgment of divorce that the anti-suit decree is designed to protect. With this in mind, we conclude that the anti-suit decree precludes the present litigation for two additional reasons.

First, it is true that the operative command of the injunction, literally read, does not restrain plaintiff from suing the present defendants by name. The normal rule is of strict construction because the usual occasion where an interpretation of the command of an injunction is required is a contempt proceeding. Imprisonment may ensue upon an adjudication of contempt. Therefore the "language of [an injunction] should not be stretched to cover acts not fairly and reasonably within its meaning." Sullivan v. Jones & Laughlin Steel Co., 222 Pa. 72, 86, 70 Atl. 775 (1908). Were we to decide whether the plaintiff should be adjudicated in contempt, we

would feel constrained to narrowly construe what is "fairly and reasonably within" the meaning of the injunction. However, our decision is only to determine whether the anti-suit decree precludes this action. We think it does because it "is the obligation of everyone properly affected with notice of a decree of Court to honestly and in good faith obey it in letter and *in spirit."* Rau v. Wilden Acres, Inc., supra, 33 Northamp. 361. (Emphasis supplied.) The present defendants are the grantees of the original defendant whom plaintiff was specifically enjoined from suing. Plaintiff cannot evade the clear purpose and intent of the injunction by simply dropping Charles Simon, her ex-husband and the primary target of her claims, from the case and substituting as defendants third-party purchasers of the same property. We, therefore, reject the transparent effort of plaintiff to avoid the spirit of the injunction. Cf. Milk Control Board v. McAllister Dairy Farms, 384 Pa. 459, 121 A. 2d 144 (1956) (adjudication of contempt proper where decree restrained sale of milk below certain price and defendant employed artifice of offering large rebates on returned bottles to avoid constraint).

Second, as earlier observed, the anti-suit decree was designed to protect the underlying judgment of divorce. If the present defendants are entitled to claim the benefit of the res judicata effect of the divorce judgment, then it is appropriate to conclude that they are within the ambit of the anti-suit decree. An in personam decree is conclusive upon and binds all parties to the litigation and those who are represented by such parties or who are subject to their control or in privity with them: Walling v. Reuter, Inc., 321 U.S. 671 (1944); Smith v. Illinois Bell Telephone, 270 U.S. 587 (1926); Barnes v.

Buck, 464 Pa. 357, 346 A. 2d 778 (1975); Burke v. Pittsburgh Limestone Corporation, 375 Pa. 390, 100 A. 2d 595 (1953); Penn-O-Tex Oil & Leasehold Co. v. Big Four Oil & Gas Co., 298 Pa. 215, 148 Atl. 92 (1929). On examination, it is clear that the benefit of the underlying judgment extends to defendants herein. They are in privity with plaintiff's husband, Charles Simon. One is in privity with another, "'who, after commencement of the action, has acquired an interest in the subject matter affected by the judgment through . . . one of the parties . . . by . . . purchase.'" Dunnick Estate, 93 Dauph. 43, 46 (1970). The divorce action was commenced on December 27, 1968. (Finding of Fact #5.) All the conveyances at issue took place subsequent to that date. (Findings of Fact #8, #9 and #13.) The present defendants, therefore, are protected by the underlying judgment of divorce and the anti-suit decree that was designed to implement that judgment.

Plaintiff's final argument is that even if the anti-suit injunction may apply to the matter sub judice, there are nevertheless insufficient equities to warrant its application. As discussed in the adjudication to which the present exceptions are addressed, the trial court must exercise its discretion in determining whether or not it should give recognition to an anti-suit injunction issued by the court of another state, 42 Am.Jur. 2d, Injunctions §227:

"Neither the full faith and credit clause nor rules of comity require compulsory recognition of an injunction issued in another jurisdiction against the prosecution of a local action at law. An injunction against the prosecution of an action in another state acts upon the parties rather than the court,

and so the court in which the enjoined action is pending has the power to proceed with the litigation despite the injunction. The fact that the plaintiff might be in contempt of the enjoining court is not a matter the foreign court would be compelled to rec-. ognize, and the failure of a party to obey the injunction, or of the court to take cognizance of the order, will not affect the validity of the decree issued in the action. Nevertheless, subject to some dissent, it has been held that the court may take cognizance of the judicial processes of another state and, as a matter of comity, recognize an injunction issued by the courts of another state, so long, at least, as the recognition of the foreign injunction does not conflict with the rights of citizens of the state in which the action is sought to be maintained."

The adjudication detailed some of the guidelines which have developed:

"As a general rule a court of equity may enjoin other pending or threatened litigation to avoid a multiplicity or a circuity of actions, Lyons v. Importers' & Traders' National Bank, 214 Pa. 428, 63 Atl. 827 (1906), to prevent interference with local litigation or evasion of the law of the local state, or otherwise where the interposition of equity is required to prevent manifest wrong or injustice. Delaware L. & W.R. Co. v. Ashelman, supra; Wenz v. Wenz, supra; Austin v. Westinghouse Electric Corp., 59 D. & C. 2d 178 (1972). In the context of the matter sub judice, it has been held that where a court has undertaken distribution or administration of the property of a litigant over whom it has personal jurisdiction, such a party may be enjoined from maintaining proceedings in another jurisdic-

tion which may conflict with the forum court's complete adjudication of the property or the rights involved. Trees v. Glenn, 319 Pa. 487, 181 Atl. 579 (1935); Kendall v. McClure Coke Co., 182 Pa. 1, 37 Atl. 823 (1897); 42 Am.Jur. 2d, Injunctions §224." Simon v. Simon, 17 D. & C. 3d 633 (1980).

We find that the instant matter falls squarely within these guidelines. We give recognition to the anti-suit injunction to avoid a multiplicity of actions and to prevent evasion of Florida law. Plaintiff nevertheless argues that the trial court failed to set forth the equities it relied upon in its adjudication. This contention is wholly without merit, as a review of the adjudication reveals the following stated equities:

(1) Plaintiff initiated the Florida divorce proceedings of her own volition, and submitted herself to that court's jurisdiction (Finding of Fact #5);

(2) Plaintiff successfully prevented the litigation of her property claims in the Florida courts (Finding of Fact #18);

(3) The alimony award granted plaintiff was predicated upon the court's finding that Charles Simon owned the subject property, such finding being premised upon a submission of a "schedule of assets" by plaintiff (Findings of Fact #23 and 25);

(4) Plaintiff had originally received the benefit of a mortgage debt reduction of $100,000 wherein she was a co-obligor upon the transfer to defendants of the subject property (Finding of Fact #11);

(5) Defendants herein stand in the position of third-party purchasers, whose rights or obligations are derivative to those of Charles Simon (Findings of Fact #8-13); and

(6) Plaintiff's attempts to have the anti-suit in-

junction invalidated have been rejected by the Federal District Court for the Eastern District of Pennsylvania and by the Third Circuit U.S. Court of Appeals. (Findings of Fact #31-33).

Plaintiff's exception to the court's application of the anti-suit injunction must therefore be denied.

## DOWER

Plaintiff makes a somewhat tortured argument that her dower rights in the disputed property must be given recognition. She contends that an improper attempt by Charles Simon to transfer the property through a deed or deeds wherein her signature was a forgery will not suffice to terminate her common law dower interest. She relies upon the controlling statute, 20 Pa.C.S.A. §2105:

"§2105. Spouse's rights

"(a) Widow.—The shares of the estate to which the widow is entitled shall be in lieu and full satisfaction of her dower at common law, so far as relates to real estate of which the husband dies seised; and her share in real estate aliened by the husband in his lifetime, without her joining in the conveyance shall be the same as her share in real estate of which the husband dies seised. The widow shall receive the same share in a future estate owned by the husband as in an estate of which he dies seised, although the particular estate shall not terminate before the death of the husband."

Plaintiff ignores the obvious. There is no right of dower (or statutory share) unless there is a valid marriage subsisting at the death of the husband. Thus, plaintiff had at most an inchoate interest in Charles Simon's real property which could not vest

until his death: Auen v. DiCesare, 266 Pa. Superior Ct. 347, 404 A. 2d 1324 (1979); Arnold v. Buffalo, Rochester & Pittsburg Railway Company, 32 Pa. Superior Ct. 452 (1907). However, plaintiff sought and obtained a divorce from her husband who still lives. A divorce granted by a court with jurisdiction over a wife serves to defeat any and all of her dower or survivorship rights: McClure v. Fairfield, 153 Pa. 411, 26 Atl. 446 (1893); Richardson Estate, 132 Pa. 292, 19 Atl. 82 (1890); Miltimore v. Miltimore, 40 Pa. 151 (1861).

Wherefore, we enter the following

## ORDER

And now, May 1, 1981, upon consideration of plaintiff's exceptions to adjudication and decree nisi, defendants' answer thereto, and the supporting briefs and exhibits, it is hereby ordered and decreed that plaintiff's exceptions are dismissed and the prothonotary is directed to enter final judgment on the adjudication and decree nisi.